**Harry Hoff, Plaintiff-Appellee, v. Yellow Cab Company, Defendant-Appellant.**

**Gen. No. 49,356.**

First District, Third Division.

November 19, 1964.

Jesmer and Harris, and Gerrard and Gerrard, of Chicago (Michael A. Gerrard and Allen S. Gerrard, of counsel), for appellant.

Morrill and Koutsky, of Chicago (Alan E. Morrill, Charles D. Snewind and Robert A. Sprecher, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is a personal injury action. At the conclusion of all the evidence the court sustained the plaintiff's motion for a directed verdict on the issue of liability. On the issue of damages the jury awarded the plaintiff $15,000. The defendant contends in this appeal that the trial court erred in refusing to give one of its instructions and in limiting the cross-examination of one of the plaintiff's medical witnesses; he further contends that the verdict was excessive.

The plaintiff Harry Hoff, who was 63 years of age at the time he was injured, was employed as a truck driver by Hoff Brothers Cartage, a concern owned by his two sons. His principal duties consisted of delivering office equipment to the various Utility Stationery stores located in the downtown area of Chicago. He loaded his truck each morning and made the rounds of the Utility stores, acting both as driver and delivery man.

On November 17, 1960, he arrived at the Utility store located at 77 West Monroe Street and parked his truck at the south curb facing east. After he finished delivering the items consigned to that location he stepped into the street at the rear of his truck to close and lock the tailgates. As he was doing so he was struck from behind by a Yellow Cab which had discharged a passenger at the south curb and which then proceeded east in the same lane in which the truck was

parked. An ambulance was called and he was taken to Wesley Memorial Hospital where he stayed until November 30th.

The plaintiff and two eyewitnesses testified that the cab pinned him against the rear of the truck and that he dropped to the pavement when the cab backed up. One of the witnesses said the cab was going 10 to 15 miles per hour when it smashed into the plaintiff and pictures were introduced in evidence showing a dent on the cab caused by the impact. The testimony of the cab driver was that he was attempting to pull out from the curb into the stream of traffic when Hoff took one or two steps backward and was struck by the right front fender of the cab.

The plaintiff stated that he had pains in his chest, back and groin and that he was semiconscious when he arrived at Wesley Hospital. An examination given him at the hospital revealed blood in his urine, contusion of his left kidney, a fracture of his left seventh rib, abrasion of his left flank and tenderness in his abdomen. X-rays also indicated a narrowing between the fifth lumbar vertebra and the sacrum with sclerosis of the adjacent margins; however, the doctor who testified about these conditions said they had been present "in excess of months." After his discharge from Wesley, Hoff was confined in bed a few days. His pains continued and he consulted Dr. Paul A. Davis who treated him 31 times between his first visit in December 1960 and his last in November 1962. The doctor testified that he diagnosed Hoff's injuries as severe contusion of the upper abdomen, severe trauma over the bladder, an inguinal hernia, a sprain of the muscles of the lumbo-sacral back, a fracture of the sixth rib and probably a fracture of the seventh. His x-rays did not reveal pathology of the sacral joints. In January 1961 he placed Hoff in Walther Memorial Hospital where Dr. James R. Oliver performed sur-

gery to correct the hernia. Dr. Davis assisted in the operation. The doctor expressed the opinion that the condition of Hoff's groin and back would be permanent and that there would be need for further medical treatment.

■ Dr. Oliver was not called as a witness and his failure to testify is the fulcrum for the defendant's contention that the court erred in refusing one of its instructions. The instruction was patterned after IPI No 5.01, which states that under certain enumerated conditions a party's failure to produce a witness may lead to an inference adverse to that party. The tendered instruction, however, omitted one of the four conditions included in IPI No 5.01: that the witness was not actually available to the adverse party. There was no showing that Dr. Oliver was under the control of the plaintiff or that he was not as available to the defendant as he was to the plaintiff. If the defendant thought his testimony important it could have called him as its own witness, as it did another doctor who had examined the plaintiff at Wesley Hospital. The instruction was properly refused.

■ Two other doctors testified for the plaintiff. One was a roentgenologist, who took x-rays of him 10 days before the trial, and the other was an orthopedist, who examined him four days before the trial started. In answers to hypothetical questions both expressed the opinion that the alleged condition of ill-being in Hoff's lower back could or might have been caused by the injury suffered by him on November 17, 1960. In his cross-examination of the roentgenologist the attorney for the defendant endeavored to elicit an opinion that the condition of the back as revealed by the x-rays could have been due to arthritis resulting from the degenerative processes of age. He did this by asking the witness to assume the same hypothesis but to eliminate therefrom any incident of trauma.

The court sustained an objection to the question. It is urged that the court erred in not permitting the cross-examiner to vary the terms of the hypothetical question. The defendant failed to include this point in its post-trial motion. Because of this omission the defendant is precluded from raising the point here. A post-trial motion must contain all the grounds relied upon for appeal and a party may not raise on review questions not specifically set out in the motion. Ill Rev Stats (1963), c 110, § 68.1(2); Lawler v. Pepper Const. Co., 33 Ill App2d 188, 178 NE2d 687; Perez v. Baltimore and O. R. Co., 24 Ill App2d 204, 164 NE2d 209.

The medical testimony of the defendant centered upon the plaintiff's hernia and back. It was the defendant's contention that the hernia was not caused by the accident and that the back condition was neither caused nor aggravated by it. Oddly enough, the plaintiff presented no testimony that there was a causal connection between the accident and the hernia, and the plaintiff's doctors did not testify, nor were they asked, whether the trauma suffered by Hoff could or might have aggravated the pre-existing condition of his back. As to the hernia, the fact that it was there in December 1960 and that an operation was had to correct it in January 1961 was simply put before the jury and the causal connection, if any, left to surmise. The physician who took care of Hoff at Wesley Hospital found no evidence of herniation, but he said that his examination of Hoff's inguinal region was made while Hoff was lying down and that a hernia could easily be missed with a patient in that position. Another doctor who, as an intern, had also examined Hoff at Wesley, testified that his examination revealed no hernia. However, on cross-examination he said that such a condition could have been overlooked. As to Hoff's back, all the doctors agreed that

the back condition revealed by the x-rays, the narrowing of the space between the sacrum and the fifth lumbar vertebra, pre-existed the accident. The dispute was whether the pain in his back was caused by being struck by the cab or was due to osteo-arthritis. The medical testimony on behalf of the defendant was that the back pain, if any, was not the result of trauma but came from the arthritic condition of his spine, a condition not uncommon in a man of Hoff's age.

We come then to the defendant's last point—that the award of damages was excessive. Hoff had worked for his two sons for eleven years and before his injury earned close to $500 a month. He was out of work more than five months and when he returned he was given duties which took two hours a day for which he was paid $40 a week until November 1961. He then applied for social security. He resumed truck driving in February 1962 and from that time until the trial in April 1963 worked half a day delivering light parcels. For this he received $100 a month—the maximum allowable under social security regulations; this income was supplemented by his social security check of $150.40 each month. He testified that driving a truck a half day tired him and that he still suffered from pains in his back and groin. Utility store managers testified that prior to the occurrence they saw Hoff almost daily and that with the exception of very heavy or cumbersome items, he carried the merchandise into their stores himself without help. When he returned to driving on the half day schedule it was necessary for them to send a porter to unload the truck and carry the merchandise into the store.

The amount of damages to which a plaintiff may be entitled in a personal injury case is primarily a question for the jury and its judgment should not be interfered with unless it is clear that under the facts and circumstances of the case the amount is ex-

cessive. Schrage v. Allied Paper Corp., 34 Ill App2d 9, 180 NE2d 221; Smelcer v. Sanders, 39 Ill App2d 164, 188 NE2d 391. It is the jury's function to determine how much weight should be given the elements of damage under consideration. Hoff's income for 1959 was $5,802.20 and for 1960 $5,489.92. In 1961 and 1962 his total income, including social security payments, was $974.53 and $3,000, respectively. His medical expenses were nearly $1,100, including the hernia operation. It was for the jury to decide whether the expenses incurred by reason of the hernia were damages attributable to the occurrence in question. Thus, it can be seen that the jury could have found damages in excess of $8,000 based on these two elements alone. The jury also could have taken into consideration damages due to pain and suffering, both past and future—including, if it so decided, the pains in the plaintiff's back, future loss of earnings and future medical expenses which might be found likely from the evidence before them. In light of all this we cannot say that $15,000 was an excessive figure.

The judgment of the Circuit Court is affirmed.

Affirmed.

SCHWARTZ, P. J. and SULLIVAN, J., concur.