Patricia Huston, Adm'rx of the Estate of Catherine Miller, Deceased, *et al.*, Plaintiffs-Appellees, *v.* Chicago Transit Authority *et al.*, Defendants-Appellants.

First District (1st Division) No. 58729

Opinion filed January 19, 1976.

Francis J. Mullen and John J. O'Toole, both of Chicago, for appellants.

Hickey, Gustafson & Peterson, of Chicago (Joseph B. Lederleitner, of counsel), for appellees.

Mr. JUSTICE SIMON delivered the opinion of the Court:

Defendants appeal from a judgment in a wrongful death action entered upon a jury verdict in favor of the plaintiff as administrator of the estate of Catherine Miller, deceased. Before this court defendants contend that the verdict was against the manifest weight of the evidence and the result of prejudicial trial errors, that the special finding of no contributory negligence was contrary to law and fact, and that the damage award of $150,000 was excessive. We disagree and affirm.

The incident resulting in Catherine Miller's death occurred at about 8:30 a.m. on October 8, 1968, at the intersection of Diversey Avenue and Pulaski Road in Chicago. Mrs. Miller had been walking east along Diversey, and stopped at the southwest corner of the intersection to wait for the light to change before crossing Pulaski. Defendant Chicago Transit Authority's bus, operated by defendant Clarence Cubie, had been proceeding east along Diversey and was stopped for the same red light. When the signal turned green, Mrs. Miller stepped off the curb into the crosswalk and the bus turned right onto Pulaski. As it proceeded through the crosswalk, the right side of the bus came into contact with Mrs. Miller at a point just forward of the rear door, and Mrs. Miller was killed.

Plaintiff's theory of the accident is that Mrs. Miller was properly crossing the street and exercising due care for her own safety when she was "picked-off" by the side of the bus as it made a sweeping right turn. Defendants urge on appeal that there was no evidence to show that the bus driver was negligent or that Mrs. Miller exercised due care for her own safety. They contend that Mrs. Miller started across the street without looking and walked into the side of the bus.

The bus driver was called as an adverse witness by the plaintiff. He admitted that while making the righthand turn the bus came into contact with a lady crossing the street. In order to make the turn it was

necessary to first angle the bus left to the center lane of Diversey and then turn wide. The bus driver testified that before turning he looked at the corner to see if anyone was there, but did not see anyone stepping off the curb on the green light to go east. He also testified that although the bus was crowded and passengers were standing at the fare box, his view was not blocked.

Three of the plaintiff's witnesses were passengers on the bus. They testified that the bus driver took the turn too fast. Two of the witnesses said that the bus went over the curb while turning. All three witnesses felt the impact and testified that the bus continued south on Pulaski for a distance without stopping until someone shouted that a lady had been run over. These witnesses testified that just prior to the accident the bus had been going too fast and was zigzagging as it was proceeding east on Diversey. One witness testified that following the accident, in response to complaints from the passengers concerning the way he had been driving, the bus driver explained that he was behind schedule.

Another of plaintiff's witnesses was driving north on Pulaski and was the first car stopped for the red light at the intersection where the accident occurred. She observed both the bus and Mrs. Miller and saw Mrs. Miller walking toward the curb as though she was going to cross Pulaski. However, she did not actually observe Mrs. Miller crossing the street because she looked away at the point when Mrs. Miller started to cross. The next thing the witness saw was the body coming out from under the right front wheel of the bus after the wheel had passed the southern line of the crosswalk.

Witnesses for the defendants, all bus passengers, testified that Mrs. Miller stepped off the curb and the bus started its turn when the light turned green. Most did not see the impact, but did feel the right rear wheel of the bus go over Mrs. Miller's body. According to these witnesses, about two-thirds of the bus was through the crosswalk at the moment of impact, which a witness who observed the impact testified occurred at about the rear door.

One of the defense witnesses testified that Mrs. Miller was looking straight ahead. Another that she was looking south and kept walking closer to the bus as it was turning, walking from 12 feet away until she was 5 feet away when the witness lost sight of her. Another witness saw Mrs. Miller take one step off the curb, a foot or 18 inches, and stop. She saw the decedent looking south. Still another witness remembered that the decedent was looking down and stepped off the curb into the bus after the bus was partially through the crosswalk. She testified that the

bus was too close to the decedent for her to walk after she stepped off the curb and that the bus came within 3 or 4 feet of the curb. Some defense witnesses testified that the bus made a slow turn and that the decedent had the green light and was within the crosswalk.

■■ The defendants contend that Mrs. Miller was guilty of contributory negligence as a matter of law. The inquiry on this issue is whether all of the evidence viewed in its aspect most favorable to the plaintiff so overwhelmingly favors the CTA and its driver that a verdict against the defendants could never stand. (*Mueller v. Sangamo Construction Co.* (1975), 61 Ill.2d 441, 338 N.E.2d 1; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 510, 229 N.E.2d 504.) What constitutes due care depends upon the circumstances which call for its use. (*Sims v. Chicago Transit Authority* (1954), 4 Ill.2d 60, 122 N.E.2d 221.) The facts presented here do not lead to the conclusion that as a matter of law, Mrs. Miller was not exercising due care when she took a step or two into the marked crosswalk under the following circumstances: Illinois law gave Mrs. Miller the right-of-way over the bus since she was already in the marked crosswalk with a green light in her favor. (Ill. Rev. Stat. 1967, ch. 95½, §§ 129(a), 167 and 171(c); *Fox v. Calhoun*, 34 Ill.App.3d 336, 340 N.E.2d 125.) Mrs. Miller had the right to assume that while she was within a marked crosswalk vehicles would be driven with reasonable care so that they would not collide with her. (*Kirby v. Swedberg* (1969), 117 Ill.App.2d 217, 253 N.E.2d 699.) Mrs. Miller while in the marked crosswalk was also entitled to assume that a vehicle would not make a right turn into the crosswalk until that movement could be made with reasonable safety. (Ill. Rev. Stat. 1967, ch. 95½, § 162(a).) After having started to cross Pulaski in the marked crosswalk, Mrs. Miller had no duty to keep a constant lookout for turning vehicles. (*Jamison v. Lambke* (1974), 21 Ill.App.3d 629, 634, 316 N.E.2d 93.) Mrs. Miller was not contributorily negligent as a matter of law in failing to anticipate that a wide-turning bus would sweep by in such a way that its rear portion would hit her after she stepped only a short distance into the crosswalk and then stopped.

Responding to a special interrogatory, the jury found that Mrs. Miller was free of contributory negligence. The defendants argue that the evidence did not support this response. Mrs. Miller was crossing a busy intersection during the morning rush hour. She did not move against the traffic signal but instead waited for the green light. At all times she remained within the marked crosswalk. Mrs. Miller ventured only a step or two into the crosswalk when she was struck by the bus which was

making a righthand turn into the crosswalk. There was evidence that the turn the bus made was a wide-sweeping one, yet it resulted in Mrs. Miller being struck when she was only a slight distance into the intersection. There was testimony that the turn was made too fast and that the bus went over the curb. From these facts the jury could legitimately conclude that Mrs. Miller was exercising due care for her own safety. The jury's answer to the interrogatory was, therefore, not against the manifest weight of the evidence.

The testimony presented to the jury on the issue of defendants' negligence was contradictory. Not only did the defense witnesses differ with the plaintiff's witnesses, but there were important inconsistencies in the accounts related by the witnesses for the defendants. The plaintiff presented evidence establishing that the bus went over the curb while turning. The defendants presented evidence tending to establish that the bus passed anywhere from within a few inches to 12 feet of the curb. Two defense witnesses testified that Mrs. Miller walked into the moving bus, while others said she took only one or two steps and then stopped in the crosswalk.

There is conflicting testimony concerning the speed with which the driver made the turn, and whether it was a sweeping or a tight turn. There is conflicting testimony concerning whether the driver's view of the corner from which Mrs. Miller stepped into the intersection was obscured just prior to and during the turn. The testimony of several of the defendants' witnesses contradict the driver's claim that no one was in the stairwell blocking his view.

The jury heard and considered the conflicting testimony of 11 bus passengers, the driver and a motorist driving north on Pulaski. The jurors had the opportunity to observe the witnesses as they testified, to evaluate their demeanor at trial and their ability to recall details 4 years after the accident, and then to make a judgment regarding the credibility of the witnesses. Under these circumstances, a reviewing court will not disturb the verdict of the jury unless it is palpably erroneous and wholly unwarranted on the basis of the manifest weight of the evidence. (*Kerbeck v. Suchy* (1971), 132 Ill.App.2d 367, 370, 270 N.E.2d 291; *Vasic v. Chicago Transit Authority* (1961), 33 Ill.App.2d 11, 180 N.E.2d 347.) Upon this record, the verdict is not against the manifest weight of the evidence.

In addition, the driver admitted failing to see Mrs. Miller standing on the corner waiting to cross the street, or starting across when the light changed. The one uncontested fact is that Mrs. Miller was standing there and did begin to cross Pulaski and, therefore, would have been visible to a driver who was keeping a proper lookout. The driver's admission

that he failed to see Mrs. Miller together with the fact that Mrs. Miller was crossing with the green light and was within the marked crosswalk answers defendants' contention that there was no evidence of negligence on the part of the driver. *Zeller v. Durham* (1962), 33 Ill.App.2d 273, 279, 179 N.E.2d 34; *Reinmueller v. Chicago Motor Coach Co.* (1950), 341 Ill.App. 178, 93 N.E.2d 120.

■■ Defendants also argue that the verdict was the result of certain prejudicial trial errors: First, that plaintiff's counsel was permitted to comment upon during argument and bring out during questioning the fact that the bus driver had been sent back to retraining school; second, that plaintiff's witnesses were permitted to testify that the bus was being driven too fast prior to its arrival at the intersection; third, that the evidence concerning Mrs. Miller's character, contributions and services to her family was so detailed that it created undue sympathy.

Clarence Cubie testified that in 1967, almost a year prior to the accident, he was sent back to the CTA retraining school for drivers where he was taught certain movements on the street, including the sliding of a bus in making a turn. Defendants contend that this evidence created the inference that Mr. Cubie was incompetent as a driver and it, therefore, should have been excluded. The complaint alleged that because of his previous driving record the CTA was negligent in permitting Mr. Cubie to operate its bus. Defendants denied this allegation thereby placing in issue whether the CTA was negligent in employing Mr. Cubie as a driver. The fact that Mr. Cubie had been sent to school for retraining was relevent on the issue of whether the CTA had knowledge of its driver's fitness to operate a bus, and was properly admitted for that purpose. *Vos v. Franke* (1916), 202 Ill.App. 133 (abstract opinion); *Guedon v. Rooney* (1939), 160 Ore. 621, 87 P.2d 209.

■■ Defendants contend that the testimony that the bus was traveling too fast on Diversey prior to its arrival at the Pulaski intersection led the jury to infer improperly that the driver was negligent at the time he turned onto Pulaski. In addition to testimony concerning the speed at which the bus was being driven prior to reaching the intersection, there was testimony that the bus was zigzagging down Diversey, and Mr. Cubie in explaining the manner in which he was driving stated that he was behind schedule. The jury could legitimately infer from all the evidence concerning the way Mr. Cubie was driving that morning that he was behind schedule, was still trying to make up lost time when the bus turned onto Pulaski and was driving negligently in making the turn and without regard to the safety of pedestrians. In view of the driver's acknowledgment that he was behind schedule, the testimony

of witnesses that the bus was going fast and zigzagging was consistent with the admission, relevant to the issue of negligence and not prejudicial.

■■ Upon reviewing the record, we do not find any excessively detailed or prejudicial evidence concerning Mrs. Miller's character, contributions and services to her family. Proof of such matters is appropriate to the question of damages. In addition, defendants during trial made no objection to any testimony concerning these facts.

Finally, defendants contend that the damage award of $150,000 was excessive. The evidence showed that Mrs. Miller was in excellent health and had a life expectancy of 28.1 years at the time of her death. She was employed and earned $160 biweekly which was spent on her family and household. In addition to working, Mrs. Miller kept house and cared for her husband and her 14-year-old son. She raised two other children who were emancipated. Each of the survivors testified briefly about Mrs. Miller's qualities as a wife, mother and homemaker. Damages are a matter to be determined by the jury (*Blyzes v. Midwest Towing Co.* (1969), 109 Ill.App.2d 48, 248 N.E.2d 305), and will not be overturned on review unless so excessive as to indicate that the jury was moved by passion or prejudice. (*Lambdin v. Walter* (1968), 91 Ill.App. 2d 273, 233 N.E.2d 435.) The award in this case was not so excessive that it can be said as a matter of law to have been the result of passion or prejudice and is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and BURKE, J., concur.