RUTH LOUISE NICHOLAS, Indiv. and as Adm'x of the Estate of Demos Nicholas, Deceased, Plaintiff-Appellant, *v.* THE CITY OF ALTON *et al.*, Defendants-Appellees.

Fifth District   No. 81-258

Opinion filed June 4, 1982.

Lakin, Herndon & Peel, P. C., of East Alton, for appellant.

Gordon R. Broom, of Burroughs, Simpson, Wilson, Hepler, Broom & McCarthy, of Edwardsville, for appellee City of Alton.

John D. Bauman, of Wagner, Bertrand, Bauman & Schmeider, of Belleville, for appellee Federal Laboratories, Inc.

JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff, Ruth Louise Nicholas, administratrix of the estate of Demos Nicholas, deceased, appeals from a summary judgment entered in favor of defendants, the city of Alton, Illinois, and Federal Laboratories, Inc.

The basis of the plaintiff's claim was that the decedent, a deputy sheriff of Madison County, died on September 13, 1972, as a result of inhaling toxic fumes on or about July 21, 1972, during a civil disturbance in Alton, Illinois. It was alleged that such toxic fumes came from tear gas grenades which were thrown by members of the Alton police department in the area of the Alby Street entrance to the Alton police station where the decedent was standing.

The complaint in this cause, originally filed on July 18, 1973, was subsequently dismissed for want of prosecution but filed a second time in a consolidated action on May 11, 1977. The defendants filed various motions to dismiss the complaint, all of which were denied by the trial court, and the cause proceeded to the discovery stage.

On September 27, 1978, the city of Alton filed a motion for summary judgment on the ground that the claimed exposure to the tear gas was not the proximate cause of the decedent's death. In support of this motion, the city of Alton submitted portions of the depositions of Dr. Thomas Martin and Dr. Martin W. Davis. The former noted the decedent's history of heart disease and diabetes and was of the opinion that the decedent died as a result of congestive heart failure which was unrelated to the inhalation of tear gas. The latter rendered a similar opinion based upon a hypothetical question. On October 2, 1978, Federal Laboratories, Inc., also filed a motion for summary judgment. On December 1, 1978, the trial court entered an order granting the defendants' motions for summary judgment.

On December 27, 1980, plaintiff filed a motion to reconsider and set aside the order granting summary judgment which was supported by the affidavit of plaintiff's attorney. The affidavit stated that Dr. Charles D. Proctor, a toxicologist, had been consulted and that Dr. Proctor would submit an affidavit indicating that exposure to tear gas in a relatively enclosed area without adequate ventilation could have caused the decedent's death. On February 9, 1979, the trial court granted plaintiff's motion and set aside the order granting summary judgment. The trial court further ordered that plaintiff produce Dr. Proctor for deposition within a reasonable time.

On July 23, 1979, the discovery deposition of Dr. Proctor was taken. Dr. Proctor stated that he had earned a Ph.D. in pharmacology and toxicology. He related that he was a professor and chairman of the Department of Pharmacology at Meharry Medical College in Nashville, Tennessee, where he teaches and conducts research in the fields of pharmacology and toxicology. He further testified that he had served as chief toxicologist of Cook County, Illinois, and had been a consultant for various national organizations. Based upon information furnished him by plaintiff's attorney, including the depositions of Dr. Martin and Dr. Davis,

Dr. Proctor was of the opinion that exposure to the tear gas and its component ingredients, particularly nitrocellulose, under the circumstances described to him regarding the case at bar, could have resulted in the death of the decedent. This opinion was based, in part, upon a number of assumptions concerning the area where decedent was located at the time of his exposure to the tear gas, the length of time which the decedent was exposed to the gas and the quantity of nitrocellulose present. Dr. Proctor did not conduct any tests on the type of tear gas grenade involved nor did he personally examine the decedent's body. He did, however, have some personal experience with toxicological research concerning the type of tear gas involved in this case.

On July 24, 1980, and August 6, 1980, the city of Alton and Federal Laboratories, Inc., respectively, filed motions to reinstate the summary judgment entered previously by the trial court. On October 10, 1980, the defendants' motions were allowed. The trial court concluded: "There is no evidence present to base an opinion as to causal connection between the tear gas cannister and death of plaintiff's decedent, nor is there any medical testimony from a qualified practitioner to support such a legal conclusion."

On November 7, 1980, plaintiff again moved to set aside the order granting summary judgment on the grounds that Dr. Proctor was qualified to render an opinion as to the cause of the decedent's death and that a medical practitioner, Dr. Robert F. Underwood, would submit an affidavit stating that there was a causal connection between the tear gas and decedent's death. On January 23, 1981, plaintiff submitted Dr. Underwood's affidavit which stated that he had reviewed the file in this cause, discussed the matter with medical experts, and concluded that the tear gas contributed to the death of the decedent.

On April 29, 1981, the trial court denied plaintiff's motion to set aside the order granting summary judgment on the ground that no new evidence was involved. The trial court also ruled that there was no just reason to delay an appeal. On May 22, 1981, plaintiff's notice of appeal was filed.

Plaintiff raises two related issues. First, she maintains that the trial court abused its discretion in finding that Dr. Proctor was not qualified to render an expert opinion regarding whether there was a possible causal connection between the decedent's tear gas exposure and his death. Plaintiff further urges that the trial court erred in granting summary judgment in favor of the defendants since the deposition of Dr. Proctor and the affidavit of Dr. Underwood gave rise to a genuine issue as to a material fact. (Ill. Rev. Stat. 1979, ch. 110, par. 57.) We reverse.

■■ Defendants argue that only a medical doctor may testify as to the decedent's cause of death. Additionally, they suggest that since Dr. Proc-

tor's testimony was based on probabilities and assumptions, it amounted to inadmissible speculation. We reject these contentions.

Defendants, while recognizing that no Illinois case holds that only a medical doctor may render an opinion as to the cause of death, cite a number of cases which they maintain can be read to infer such a rule. We find defendants' cases distinguishable. *People v. Jones* (1961), 22 Ill. 2d 592, 177 N.E.2d 112, and *People v. Love* (1978), 71 Ill. 2d 74, 373 N.E.2d 1312, both addressed the question of whether the State in a criminal case must present medical testimony as to the cause of death and held that such testimony is unnecessary where the cause of death is established beyond a reasonable doubt by other competent evidence. We do not read either *Jones* or *Love* as establishing a *per se* rule that only a physician may render an expert opinion as to the cause of a person's death. Defendant, Federal Laboratories, Inc., directs our attention to *Dolan v. Galluzzo* (1979), 77 Ill. 2d 279, 396 N.E.2d 13, which held that in order to testify concerning the standard of care to be exercised by a podiatrist, an expert witness must be licensed in the school of medicine of which defendant was a member. We note, however, that the Illinois Supreme Court has not strictly interpreted *Dolan* and has indicated that under some circumstances, a plaintiff's witness, although not a medical practitioner, may testify as a medical expert. See *Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 291-93, 415 N.E.2d 390, 395-96.

More pertinent to the case at bar is *People v. Richards* (1970), 120 Ill. App. 2d 313, 256 N.E.2d 475, upon which plaintiff relies. There the court found that it was not error to permit an expert with training in chemistry and pharmacology to express an opinion as to how long it would take for a certain drug to induce a coma and how long it would take for a person to be asphyxiated and die from carbon monoxide within a garage of specified dimensions. (120 Ill. App. 2d 313, 345, 256 N.E.2d 475, 492.) The expert witness in *Richards* had no background as a medical doctor but had a Ph.D. in organic chemistry, specialized in biochemistry, and had practiced many years in the field of toxicology. In the instant case, Dr. Proctor has a Ph.D. in pharmacology and toxicology and a bachelor's degree in chemistry. He is a professor and chairman of the pharmacology department of a medical school and was chief toxicologist of Cook County, Illinois, for a number of years. Dr. Proctor has also served as a consultant for various national health organizations. Considering Dr. Proctor's education and experience, we find that he was sufficiently qualified to render an opinion as to whether the exposure to the tear gas could have resulted in the decedent's death.

■■ We also cannot accept the defendants' argument that Dr. Proctor's opinion amounts to mere speculation and cannot be considered evidence concerning the cause of death. (See *Clifford-Jacobs Forging Co. v. In-*

*dustrial Com.* (1960), 19 Ill. 2d 236, 243, 166 N.E.2d 582, 586; *Presswood v. Morris* (1979), 70 Ill. App. 3d 513, 388 N.E.2d 844.) As this court stated in *Presswood*:

> " '[An expert] may testify to 'what might' have caused a death or injury, despite any objection that his testimony is inconclusive and speculative. The testimony is but the opinion of the witness given on facts assumed to be true. It is for the trier of fact to determine the facts.' " (70 Ill. App. 3d 513, 517, 388 N.E.2d 844, 848, quoting *Beloit Foundry v. Industrial Com.* (1976), 62 Ill. 2d 535, 539, 343 N.E.2d 504, 506.)

We adhere to the principle that an expert opinion couched in terms of probabilities or possibilities based upon certain assumed facts is neither inadmissible nor improper.

■■ In determining whether the evidence is sufficient to give rise to a genuine issue as to a material fact, we observe that the opinion expressed in Dr. Proctor's deposition regarding a possible causal connection between the tear gas and the decedent's death is further supported by the affidavit of Dr. Underwood, a medical practitioner. While defendants argue that Dr. Underwood's affidavit cannot be considered since it was not in a proper form under Supreme Court Rule 191(a), we hold that this contention has been waived by defendants' failure to object to this affidavit in the trial court. *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 501, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.

In view of the above analysis, it is apparent that the case at bar presents a situation in which there is conflicting expert opinion. Defendants' experts maintain that the decedent's death could not have resulted from the inhalation of tear gas, while plaintiff's experts have reached a contrary conclusion. We conclude that, under these circumstances, there is an issue of fact for the trier of fact to decide. Therefore, the summary judgment entered by the circuit court of Madison County is erroneous.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

JONES and HARRISON, JJ., concur.