ROBERT NICHOLSON, Plaintiff-Appellee, v. ST. ANNE LANES, INC., Defendant-Appellant.

Third District   No. 3—84—0300

Opinion filed August 23, 1985.—Rehearing denied October 17, 1985.

Robert W. Boyd, of Ackman, Marek, Boyd & Bigott, Ltd., of Kankakee, and Richard E. Mueller, Hugh C. Griffin, and William D. Frazier, all of Lord, Bissell & Brook, of Chicago, for appellant.

Christopher W. Bohlen and James M. Giacoma, both of Blanke, Norden, Barmann & Bohlen, P.C., of Kankakee, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff, Robert Nicholson, while a customer at the bowling alley and bar operated by St. Anne Lanes, Inc., in the town of St. Anne, slipped on a bar of soap on the floor of the men's restroom and fell, incurring serious back injuries. Plaintiff filed a negligence action against defendant, and following a trial by jury, a verdict of $886,000 was returned in plaintiff's favor. The court entered judgment in the amount of $779,400 to reflect the jury's finding that 10% of the negligence was attributable to plaintiff. Defendant has appealed.

According to the witnesses at trial, plaintiff operated an automobile body repair business. About 2:30 p.m. on August 4, 1980, two friends asked him to go with them to have a beer, and he said since he had to wait for a primer coat to dry, he would accompany them to the bowling alley operated by defendant. He sat at the bar with them and ordered a beer. After taking one sip of the beer, he left the bar to go to the restroom. As he pushed the door open and stepped into the small restroom, his feet slipped out from under him and he fell, hitting both the edge of the door and the floor as he landed. He noticed soap on the heel of one of his boots, and he saw a piece of a bar of soap on the floor.

His friends and the bartender, "Boscoe" Vadeboncoeur, heard the crash from the restroom and rushed in to find him on the floor. They, too, noticed a partial bar of soap on the floor and also saw a skidmark on the floor. The men helped plaintiff up, and the bartender used some paper toweling to clean up the soap from the floor. Plaintiff sat at the bar for a short time before he left to go home, complaining that his back hurt. Later that same day he went to the hospital to have his back examined, and subsequently he had a laminectomy to repair damage to the disc in his back.

Plaintiff testified that he reinjured his back in April of 1981, when he tripped on a rug at home and again in October of 1981, when he experienced a sharp pain upon turning over in bed. On both of these occasions, back surgery was required. He was again hospitalized in January of 1982 following more trouble with his back. Plaintiff testified that, from the time he fell in the restroom, he was not able to do

any "bending, stooping, nothing." Plaintiff, who was 33 years old at the time of trial, cannot walk without pain and cannot engage in any physical activities. Since he is unable to do any work in the auto body shop which was his sole means of support, he has had to lease the business to someone else for $109 per month. Plaintiff's physician testified that plaintiff has not been able to do any lifting since his original fall and that his disability is permanent. In response to a hypothetical question as to whether plaintiff's present condition is a result of the fall in the restroom, the physician stated that, in his opinion, "It is possible."

The bartender on duty at the time of plaintiff's fall testified in plaintiff's behalf. "Boscoe" Vadeboncoeur stated that he came to work between 10 and 10:30 a.m. each day, that it was his job to clean the bar and the restrooms, vacuum the carpets, clean the patrons' sitting area in the bowling alley, stock the coolers and to act as bartender during the daytime hours. He was not required to check the restrooms again except as he had occasion to use them for his own needs. He could not recall what time he cleaned the restrooms on the day in question, but he indicated that it could have been as early as 10 a.m. when he first came in or as late as noon. He also testified that there had been an average number of customers in the bar that day during the noon hour—three or four or five. "Boscoe" had been employed as daytime bartender by the previous owner and had continued when defendant corporation took over ownership of the business. At first, soap dispensers containing liquid soap were mounted on the wall in the restroom, but after those dispensers kept being taken off the wall by users of the restroom, the previous owner had switched to bar soap, and defendant corporation had continued the practice. A soap dish was attached to the wall above the sink to hold the bar soap. Small bars similar to those supplied in motels were used. "Boscoe" testified that he sometimes found the soap in the sink, sometimes on the edge of the sink, sometimes in the soap dish, and on one or two occasions he saw the soap on the floor. He said that he knew it was a dangerous condition to have the soap on the floor.

Terry Lade, one of the friends who had accompanied plaintiff to the bar, stated that after plaintiff fell, "Boscoe" said that it was hard for him to keep both the bar and the restroom clean, and also that he thought using bar soap created a dangerous condition.

The four men who own defendant corporation testified in behalf of defendant. One of the owners acted as manager of the bowling alley operation, and he came to the establishment every day about 6 p.m. The other three men alternated evenings managing the bar and

restaurant operation. None of the owners was present at the time of the accident, but the bartender did report plaintiff's fall to the owner who came on duty later that day. According to the four owners, they personally inspected the restrooms during the evening hours to assure cleanliness, and during the fall and winter when business was brisk, the restrooms were inspected at regular intervals during the day. However, in the summer when business was very slow, the only attention given the restrooms was the morning cleaning followed by informal inspection during use by the bartender as previously described. All of the owners denied ever seeing a bar of soap on the floor, and none had ever been informed that soap on the floor was a problem. The defendant continued to use bar soap until the business closed in December of 1981. However, after this accident, a vanity was installed in the restroom to provide larger counter space around the sink.

The jury found for the plaintiff, and further found that his total amount of damages as a proximate result of the occurrence in question was $886,000, that 10% of the negligence that was a proximate cause of plaintiff's injury was attributable solely to plaintiff, and that his recoverable damages were $779,400. In answering four special interrogatories, the jury found: (1) that there was soap or water on the restroom floor at the time of plaintiff's injury, (2) that defendant did not know of the presence of soap or water on that day prior to plaintiff's fall, (3) that the soap or water was on the floor a sufficient length of time so that in the exercise of ordinary care defendant should have discovered its presence, and (4) that defendant should have known in the exercise of ordinary care that use of bar soap created an unsafe condition.

■ On appeal, defendant first contends that plaintiff failed to establish that defendant had actual or constructive notice of the soap on the floor of the restroom and, therefore, that judgment *n.o.v.* should have been entered in favor of defendant. Defendant relies upon the general rule governing "slip and fall" cases in Illinois that, as a matter of law, a proprietor is not liable to customers for injuries received in a fall allegedly due to a foreign object on the floor where there is no evidence (a) that the object was placed on the floor by an employee, or (b) that any employee knew the object was on the floor prior to the accident, or (c) that would indicate the length of time the object was on the floor. (*Olinger v. Great Atlantic & Pacific Tea Co.* (1961), 21 Ill. 2d 469, 173 N.E.2d 443.) In *Hayes v. Bailey* (1980), 80 Ill. App. 3d 1027, 400 N.E.2d 544, this court affirmed a directed verdict in favor of the defendant in a case where a customer slipped and

fell on water on the floor of a restaurant restroom. There the fall occurred about 12:30 a.m., and the last inspection had taken place at 10 p.m. There was no evidence to indicate whether the water had been on the floor 2½ hours or 2½ minutes before the fall. We held that it is incumbent upon the plaintiff to establish that the foreign substance was on the floor long enough to constitute constructive notice, and where there was no evidence at all regarding how long the water had been on the floor, it was not error for the court to refuse to submit the case to the jury.

In the instant case, just as in *Hayes v. Bailey*, plaintiff did not establish that the soap had been on the floor long enough to give defendant constructive notice since, in fact, no evidence at all was introduced relating to when or how the soap came to be on the floor. However, in this case there was evidence that the bartender had previously observed soap on the floor and that he knew the small bars of soap used by defendant created a potentially dangerous condition in the restrooms. This evidence brings the case within the holding of the Illinois Supreme Court in *Perminas v. Montgomery Ward & Co.* (1975), 60 Ill. 2d 469, 328 N.E.2d 290, where a customer fell after stepping on a small triangular object with wheels which was on the floor in the store aisle. The object was a floor polisher attachment which the defendant displayed on certain low shelves. A store clerk testified that within the previous 30 days, she had seen children and adults, including store employees, using such attachments like skateboards in the store aisles. The supreme court held that, once the defendant had notice of the dangerous condition, it had an obligation either to correct the condition or to give its customers sufficient warning to enable them to avoid harm. The court said:

"In failing to take any of these steps, defendant could be considered to have breached its duty to exercise ordinary care in maintaining its premises in a reasonably safe condition. Viewed in this perspective, the evidence is sufficient to establish negligence in spite of plaintiff's inability to offer any specific evidence regarding the manner in which the particular attachment which caused his accident reached the floor." 60 Ill. 2d 469, 475, 328 N.E.2d 290, 294.

In denying defendant's motion for a directed verdict at the close of plaintiff's case, the trial court held that this case is controlled by the ruling in *Perminas*. The court commented on the fact that, in addition to a bowling alley and bar, defendant's premises included a pool table and video games which would be attractive to youthful patrons. The court observed:

"Frankly I am not too sure that the use of this kind of soap in a public restroom isn't almost negligence per se. *** [S]oap on the floor of any restroom or *** washroom of any kind is an extremely dangerous and hazardous situation. No provisions were made to check and make sure that this soap was where it is supposed to be. Using *** bars of soap instead of a dispenser in a place that is used as a bowling alley, a pool hall, a game hall, and a bar, you are just asking for trouble. *** Not only is it reasonably foreseeable under this kind of operation that they have going there that bars of soap would end up on the floor, it in fact did happen and was seen in [sic], prior to the accident by one of their employees ***."

While we agree with the determination of the trial court that the evidence was sufficient to submit the question of negligence to the jury, we do not intend any departure from the rule that a storekeeper is not the insurer of his customer's safety, nor do we hold that a bowling alley owner is negligent simply by supplying bar soap in public restrooms. As the supreme court stated in *Perminas*:

"Liability must be founded on fault; and that fault is found here in the evidence that defendant, after receiving notice that a particular product was creating a dangerous situation, failed to return its premises to a safe condition or warn its customers of the existence of the danger." (*Perminas v. Montgomery Ward & Co.* (1975), 60 Ill. 2d 469, 476, 328 N.E.2d 290, 294.)

Accordingly, we hold that the trial court did not err in refusing to enter a judgment *n.o.v.* in favor of defendant.

■ Defendant next contends that it is entitled to a new trial because of the improper admission of hearsay testimony as to the bartender's opinion concerning the use of bar soap in the restrooms. Defendant argues first that the bartender was not qualified as an expert and thus was not entitled to give an opinion and second, that the bartender's statement was not made within his agency or authority. These contentions are fairly simple to dispose of. The "hearsay" characterization originates with testimony offered by Terry Lade, plaintiff's friend, and by plaintiff reporting the statements made by the bartender. The trial court permitted the statements into evidence since they were relevant to the issue of knowledge or notice of a dangerous condition. Also, the bartender testified directly to the same thing, and so the hearsay reports of Lade and plaintiff were merely corroborative of the bartender's direct testimony.

The bartender's statements were not offered as expert opinion on the subject of restroom safety. Rather, they were offered as state-

ments disclosing his knowledge and familiarity with the obvious danger of bar soap falling on the floor when in use in a public restroom. As the trial court indicated, this testimony went to the question of knowledge and reasonableness, which could be imputed to defendant. As such it was admissible. (*Cf. John v. Tribune Co.* (1960), 28 Ill. App. 2d 437, 171 N.E.2d 432, *rev'd on other grounds* (1962), 24 Ill. 2d 437, 181 N.E.2d 105.) In addition, defendant also complains that statements by the bartender concerning the safety of using bar soap were beyond the scope of his authority, since he was not responsible for determining what kind of soap would be used in the restrooms. The bartender *was* responsible for cleaning the restroom, and his statements relating to dangerous conditions therein are sufficiently related to his duties as to be admissible.

■ Defendant's final contention is that the verdict was so excessive that this court should either order a new trial or should enter a remittitur. Several arguments are advanced in an effort to persuade us that the verdict was excessive. First, defendant discusses seven personal injury cases involving back injuries where the verdicts were less than in the instant case, and then argues that the present case is the highest back injury award upheld in this State and is the highest award for any injury ever returned in Kankakee County. Defendant cites no authority for the unique proposition that damage awards should be reviewed solely on the basis of comparable awards made in the past, and we decline to adopt any such guideline.

Defendant also challenges the jury award on the ground that plaintiff failed to establish that all of his present physical ailments and disabilities were caused by the 1980 fall. Plaintiff's account of his problems indicated a direct connection between his present physical problems and the original back injury incurred in the fall. When asked whether plaintiff's present condition was a result of his original fall, the treating physician stated that in his opinion, it was possible that the fall was "the causative factor." As plaintiff points out, defendant did not plead or attempt to prove a defense based on an intervening cause. It has been held that an expert medical opinion indicating probabilities or possibilities is properly admitted. (*Nicholas v. City of Alton* (1982), 107 Ill. App. 3d 404, 437 N.E.2d 757.) Since the physician's testimony was proper, we believe the question of how much damages were proximately caused by the fall was properly for the jury to decide.

■ It is well-established that reviewing courts must be reluctant to interfere with the discretion of the jury in matters relating to damages (*Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237), that the

amount of damages fixed by the jury should not be disturbed on appeal unless it is obviously the result of passion and prejudice (*Huston v. Chicago Transit Authority* (1976), 35 Ill. App. 3d 428, 342 N.E.2d 190), or unless clearly excessive. (*Hoff v. Yellow Cab Co.* (1964), 53 Ill. App. 2d 333, 203 N.E.2d 8.) The evidence in this case established that this 33-year-old plaintiff had undergone three laminectomies, that he suffers from continuous pain, that he is permanently disabled and cannot work, and that his physical activities, including walking, are severely restricted. Considering the extensive evidence of pain and suffering, disability, and medical expenses, all of which was uncontradicted, we cannot say that the jury's award is beyond the range of the evidence.

For the reasons stated, we affirm the judgment of the circuit court of Kankakee County.

Affirmed.

HEIPLE, P.J., and SCOTT, J., concur.