GUY WASHINGTON, Plaintiff-Appellee, v. ROBERT WILLIAMS, Defendant-Appellant.

Third District   No. 3—90—0850

Opinion filed July 10, 1991.

Arthur J. Inman, of Peoria, for appellant.

William T. Makovic, of East Peoria, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiff, Guy Washington, brought this action against the defendant, Robert Williams, to recover damages for personal injuries the plaintiff sustained in a hunting accident. The trial court found that Williams had engaged in wilful and wanton misconduct and awarded Washington $25,000. The defendant appeals. We affirm.

At trial, Williams testified as an adverse witness for Washington. He said he had known Washington for 20 to 25 years and that they had been close friends for three to four years prior to the incident. The two, along with Ellis Moore and Otis Grant, frequently went rabbit hunting together. All four went hunting together on November 8, 1981. While Moore remained near the parked car, the other three entered a wooded area approximately 60 feet wide. They proceeded in a straight line, with Williams in the center, Washington to his right, and Grant to his left. Because he was uncomfortable in the middle, Williams went ahead of the other two and climbed up on a brush top where a tree had fallen. Williams then waited for the dogs to flush out rabbits. Washington and Grant were still to Williams' right and left respectively, but behind him. They were squatting down, waiting for a rabbit to come by.

Williams stated that the woods were not thick and he could see to either side, but had to look hard to see where everyone was. According to Williams, Grant fired six times somewhere behind them and killed a rabbit. Williams shot twice at a rabbit he saw coming straight toward him. His shots were fired in the direction of the car, but toward the ground about 10 to 15 feet in front of him. Williams denied Washington had called to him warning that a rabbit was approaching. He noted that before firing, he had looked at Washington.

Approximately five minutes after Grant fired his last shot, Williams saw Washington crawling out of the woods shouting he had been shot. Washington was about 30 to 40 feet away from Williams. Williams called to the others that Washington was shot. He and Grant then carried Washington to the car. Williams first testified he drove Washington to the hospital, but later stated that Grant drove. Williams saw no blood on Washington's face or eye, but Washington was holding his hand over his eye.

Williams stated that as an experienced hunter, he was aware there was a rule or custom not to shoot toward what you could not see. He also stated that perhaps Washington had been shot earlier

while hunting elsewhere and the others had brought Williams out there hunting in order to place the blame on him.

Ellis Moore testified he was a friend to both Washington and Williams and had often hunted with both in the past. On the morning of the incident, prior to the hunt, Moore noticed nothing unusual about Washington's eye. During the hunt, Moore waited by the car and therefore did not see how Washington was shot. He noted when Williams came running past him to the car, Williams said nothing. A few minutes later, Grant came down the hill holding Washington by the arm. Grant said that Washington had been shot. Moore saw blood coming from between Washington's fingers that were covering his eye. After the four men got into Williams' car, Grant drove because Williams was too nervous. On their way to the hospital, Williams said, "I'm sorry. I didn't intentionally shoot Guy."

A few years after this incident and prior to his testimony in this case, Moore talked to Williams. Williams told Moore he did not know whether he had shot Washington. Moore responded by telling Williams he had previously told Moore he shot Washington. Williams said he was excited then and liable to say anything.

At the time of trial in November of 1990, Washington was 79 years old. He corroborated Williams' testimony concerning the positions of the group prior to the shooting. According to Washington, though, once Williams was on the brush pile up ahead, Washington called to him that a rabbit was approaching. Williams, who was facing Washington, shot downward and Washington jumped up. Williams shot again and hit him. Washington said that he could see through the woods and was looking right at Williams when he shot him. He immediately fell to the ground and called to Grant that he had been shot. When he put his hand over his eye, he felt blood and slime running through his fingers. Williams started running towards the car. Grant drove Williams' car to the hospital because Williams was too nervous. On the way, Williams told Washington he was sorry he shot him.

According to Washington, prior to this shooting, he had 20/20 vision. He stated he had not injured his eye before or after the incident. As a result of the incident, he lost his right eye, undergoing two operations for its removal. However, the surgeons were unable to remove the BB's. He noted he had experienced headaches since the shooting and his eye still caused him pain. While he still drove during the day, he drove less frequently at night due to the strain. He could not see things up close and could not read anymore.

Williams took the stand on his own behalf and denied shooting Washington. He denied having any conversation with Moore after the

incident. He also denied saying he was sorry he shot Washington, though he did say at the scene that he was sorry that Washington had been shot.

The trial court found Williams liable under the count charging wilful and wanton misconduct and awarded Washington $25,000 in damages.

On appeal, Williams argues the trial court's finding of wilful and wanton misconduct was against the manifest weight of the evidence. We disagree.

■ A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others. Such acts include the failure to exercise ordinary care to prevent injury after knowledge of an impending danger. The trier of fact must closely scrutinize the facts the evidence discloses to determine whether wilful and wanton misconduct exists in a given case. (*Barth v. Board of Education* (1986), 141 Ill. App. 3d 266, 490 N.E.2d 77.) It is well established that in a bench trial it is within the province of the trial court to determine the credibility and weight of testimony, to resolve inconsistencies and conflicts, and to render its decision accordingly. Furthermore, a trial court's decision will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. *Silas v. Robinson* (1985), 131 Ill. App. 3d 1058, 477 N.E.2d 4.

■ Applying the above principles to the instant case, we conclude the trial court's verdict was consistent with the manifest weight of the evidence. The court could reasonably conclude from the evidence that Williams displayed reckless disregard for Washington's safety.

Initially, we note it is apparent the trial court simply did not find Williams' testimony credible and believed both Washington's and Morris' testimony instead. According to Washington, Williams was facing him when he fired his gun. Washington testified that he jumped up after Williams' first shot. Williams did not deny he saw where Washington was. Yet, he again shot in Washington's direction, this time hitting him. Given these circumstances, the trial court's finding of wilful and wanton misconduct was not against the manifest weight of the evidence.

Williams also contends that the trial court's award of $25,000 was excessive. He argues the trial court had no evidence before it from which it could determine the value of the injury.

■ It is well established that reviewing courts must be reluctant to interfere with the discretion of the trier of fact in matters relating to damages. The amount of damages fixed by the trier of fact should

not be disturbed on appeal unless it is obviously the result of passion or prejudice, or is clearly excessive. *Nicholson v. St. Anne Lanes, Inc.* (1985), 136 Ill. App. 3d 664, 483 N.E.2d 291.

Williams does not cite any authority, nor can we find any, for his apparent proposition that damages must be proved by medical testimony. The evidence in this case established that prior to this incident, Washington had no pain or problems with his eye. At the age of 70, he had to undergo two operations for the removal of his eye. Additionally, the doctors were unable to remove the BB's. Approximately nine years after this shooting, Washington was still experiencing pain in his eye area, headaches, and was unable to read anymore. Considering the extent of Washington's disability, we conclude the amount of damages was not clearly excessive.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

STOUDER, P.J., and HAASE, J., concur.