RENEE WILLIAMS, Indiv. and Next Friend of Josh Williams, a Minor, Plaintiff-Appellee, v. MARTIN H. CAHILL *et al.*, Defendants (Dennis Wooden, Defendant-Appellant).

Third District    No. 3—93—0628

Opinion filed February 25, 1994.—Rehearing denied March 30, 1994.

Boyle, Goldsmith, Shore & Bolin, of Hennepin (Roger C. Bolin, of counsel), for appellant.

Law Office of Jay N. Janssen, of Peoria (Kevin M. Miller, of counsel), for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

The plaintiff, Renee Williams, filed this lawsuit to recover for personal injuries she suffered when the school bus in which she was riding was struck by a truck driven by defendant Dennis Wooden. The plaintiff also brought suit against the driver of the school bus, Martin Cahill (the bus driver), and his employer, Headstart. Prior to

trial, the bus driver and Headstart agreed to settle with the plaintiff for $60,000. Following a bench trial against defendant Wooden, the trial court found that the plaintiff's damages were $293,000. The trial court allowed a $60,000 credit based on the previous settlement and further found that Wooden was only 40% at fault while the bus driver was 60% at fault. Accordingly, the trial court entered judgment against Wooden for $233,000. Wooden appeals, contending that the court's judgment, which found that he was at fault, was against the manifest weight of the evidence. He also argues that the plaintiff's counsel made a binding admission in his closing argument regarding the value of the plaintiff's case.

We affirm the trial court's decision finding defendant Wooden 40% at fault. We further find that the plaintiff's attorney's statement during closing argument was not a binding judicial admission of the damages suffered by the plaintiff.

The record shows that the school bus driven by Cahill had a capacity of 18. At the time of the accident, the bus driver was returning four children home from school. The 23-year-old plaintiff was riding the bus with her son. The bus driver was familiar with the route because he had driven it regularly for about five years.

As the bus travelled west on Route 88, the driver intended to take a right turn where Route 88 turns to the right. Apparently because the children were noisy, the bus driver missed the turn and continued straight on Route 93. About one-half mile past the intersection where he initially intended to turn, the bus driver attempted to turn around. At this location, there was no intersection, driveway or any other kind of entrance.

Defendant Wooden testified that he had been following the bus in a westerly direction in his semi-tractor truck. As Wooden passed the intersection where the bus driver should have turned, the distance between the two vehicles was about 300 feet. One-half mile from that intersection, Wooden attempted to pass the bus. Wooden was travelling at a speed of about 35 miles per hour. Wooden had stated in his deposition that he had noticed the bus veering toward the center line. He drove his truck into the oncoming lane of the two-lane highway in an attempt to pass the bus when he was about 50 to 100 feet away from it. He observed that the bus travelled toward the center line and then turned sharply to the left in front of him. According to Wooden, the bus did not have a turn signal flashing.

In an attempt to avoid a collision, Wooden drove his vehicle off the road and paved shoulder and into the ditch to the left. The right front corner of the truck struck the left front corner of the bus. The point of impact occurred eight feet off the paved portion of the highway.

The bus driver testified that he saw the truck coming when he attempted to slow the bus approximately three-eights of a mile past the intersection. The truck was about three-eighths of a mile behind him and he felt that he had time to turn the bus and afterward the truck would have time to get by. He also stated that he checked his brake lights and turn signals prior to the trip and they were in proper working order. According to the bus driver, before he attempted to turn around, he slowed, and applied his brakes and turn signal.

The distance from the intersection to the point of impact is approximately one-half mile. The area was described as a level stretch of roadway.

According to the plaintiff, when the bus attempted to turn left, she was thrown forward and struck her head and knee on the seat in front of her. This occurred prior to the impact with the truck. When the collision was over, the plaintiff was on the floor of the bus in the aisle. She noted that she did not fall into the aisle until after the impact with the truck. Furthermore, she did not think that she sustained her injuries from the bus driver's left turn, but she was not certain.

Following the accident, the plaintiff received conservative medical treatment for the back injury she suffered. One year after the accident, she aggravated the injury and consequently had to undergo surgery. The plaintiff was left with nerve damage, no feeling below the knee, and her left foot was immobile and atrophied.

During his closing argument in the case, the plaintiff's counsel stated:

> "The court has already approved a settlement and found it was made in good faith of $60,000. I think that represented half the case. I think it's now time for another half to be paid, another $60,000. *** It is not too much to be asking for a $120,000 verdict, subtract $60,000 setoff from the one settling defendant. *** Again, I ask for a verdict of $120,000."

The trial court found that the plaintiff's total damages were $293,000. After finding that defendant Wooden was 40% at fault and after subtracting an amount for the previous settlement paid by defendants Cahill and Headstart, the court entered a final judgment against Wooden.

On appeal, Wooden argues that the trial court's judgment finding him 40% at fault was against the manifest weight of the evidence. Wooden contends that the bus driver was not aware of the truck's position behind him for a substantial period of time before the accident and nothing in the record indicates that Wooden's "passing maneuver" was negligent. Wooden further contends that there was no evi-

dence that the collision caused the plaintiff's injuries rather than the sharp left turn by the bus.

It is axiomatic that it is within the province of the trial judge to determine the credibility and weight of the testimony, to resolve inconsistencies and conflicts, and to render a decision accordingly. (*Washington v. Williams* (1991), 215 Ill. App. 3d 607, 575 N.E.2d 581.) The court's decision will not be disturbed unless it is against the manifest weight of the evidence. *Kalata v. Anheuser-Busch Cos.* (1991), 144 Ill. 2d 425, 581 N.E.2d 656.

■ Here, the bus driver testified that he had been periodically watching the truck behind him. He noticed him again about three-eighths of a mile past the intersection when he began slowing down the bus to make the turn-around maneuver. The bus driver stated that he slowed his vehicle to between 5 and 10 miles per hour and activated his left turn signal before attempting to turn around. Further, he noted that when he saw the truck behind him he felt the truck could proceed behind him. As the trial judge noted:

"[T]he total distance from the junction to the point of impact [was] only one-half mile on level road. The inferences which the court may draw from this scenario would be that the defendant had the school bus in view at all times, could obviously see that the driver of the school bus was attempting to negotiate some maneuver, and when he came upon the vehicle, decided he could take a chance and pass the same on the left.*** It is common knowledge that school buses make unscheduled stops ***. The defendant, having been put on notice of this situation failed to keep a proper lookout *** and *** should be considered to be 40% at fault."

Under the circumstances, we are unable to say that the court's determination was against the manifest weight of the evidence. The trial judge was in a superior position to assess the credibility of the witnesses, resolve any conflicts in the evidence and to draw reasonable inferences therefrom. Accordingly, we will not disturb the court's finding of liability.

■ Regarding the question of whether the collision caused the plaintiff's back injury, we note that the plaintiff testified that the bus driver's turn caused her to hit her knee and head on the seat in front of her. However, she did not fall to the floor of the aisle until after the collision with the truck. Moreover, although she was not certain, she did not think that the left turn caused her injuries. Further, the bus driver described the collision in his deposition as "felt like being hit by a freight train." The proximate cause of an injury is a question for the trier of fact. (*Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d

126, 374 N.E.2d 203.) Here, we find that the question of whether the collision caused the plaintiff's injuries was for the trial judge, as the trier of fact, to resolve, and under the facts of this case, the trier of fact could have properly concluded that the injury to the plaintiff's back occurred from a collision with a truck rather than a sharp left turn.

Next, Wooden claims that the plaintiff's attorney's comments during closing argument in which he asked for a $60,000 judgment amounted to a judicial admission.

Statements made by an attorney during closing argument may be the basis for which a trial court can find a judicial admission. (*Lowe v. Kang* (1988), 167 Ill. App. 3d 772, 521 N.E.2d 1245.) However, whether a statement by an attorney in the course of trial is a judicial admission depends upon the circumstances of the individual case and the giving of a consistent meaning to the statement in the context in which it is found. *Lowe v. Kang* (1988), 167 Ill. App. 3d 772, 521 N.E.2d 1245; *Standard Management Realty Co. v. Johnson* (1987), 157 Ill. App. 3d 919, 510 N.E.2d 986.

■ Here, the two cases cited by Wooden involved judicial admissions with respect to either liability or a question of law in the case. (See *Lowe v. Kang* (1988), 167 Ill. App. 3d 772, 521 N.E.2d 1245 (judicial admission of liability found where counsel for defendant acknowledged during closing argument that defendant was at fault); *Standard Management Realty Co. v. Johnson* (1987), 157 Ill. App. 3d 919, 510 N.E.2d 986 (opening statement by counsel held not to be a judicial admission that defendant was a tenant for a specified period).) The parties do not cite, nor are we aware of, any Illinois case where a judicial admission was found with respect to a statement by an attorney during closing argument concerning damages. Viewing the plaintiff's counsel's comments in context, we find that they were in effect no more than an opinion and should not be considered a binding admission.

For the foregoing reasons, the judgment of the circuit court of Stark County is affirmed.

Affirmed.

SLATER, P.J., and LYTTON, J., concur.