FLANDERS ELECTRIC MOTOR SERVICE, INC., an Indiana corporation, Plaintiff–Appellant,

v.

DAVALL CONTROLS & ENGINEERING, Defendant.

and

The GARDNER–ZEMKE COMPANY, Garnishee–Appellee,

v.

ASTROSYSTEMS, INC., and Consolidated Parts, Interpled Parties.

No. 91CA0060.

Colorado Court of Appeals, Div. V.

April 9, 1992.

Eiberger, Stacy, Smith & Martin, Carl F. Eiberger, Paul F. Hodapp, Denver, Bowers, Harrison, Kent & Miller, David V. Miller, Evansville, Ind., for plaintiff-appellant.

No appearance for defendant.

Fairfield & Woods, P.C., Daniel R. Frost, Denver, for garnishee-appellee.

No appearance for interpled parties.

Opinion by Chief Judge STERNBERG.

Flanders Electric Motor Service (Flanders) appeals from the discharge of its writ of garnishment against Gardner–Zemke Co. (G–Z) to recover funds allegedly owed to its judgment debtor, Davall Controls & Engineering (Davall). We affirm.

G–Z was an electrical subcontractor on several construction projects for the Bureau of Reclamation's Central Arizona Irrigation Project. Davall was a supplier and subcontractor to G–Z, and Flanders was one of Davall's suppliers.

Flanders obtained a default judgment for $198,888.12 against Davall, and thereafter, it served a writ of garnishment on G–Z. G–Z denied liability, and Flanders traversed the garnishee's answer. Because they were attempting a settlement, both parties agreed to vacate a hearing on Flanders' traverse. In an amended answer, responding to new evidentiary issues raised in the traverse, G–Z again denied liability on the grounds contending that all amounts owed to Davall were contingent. Additionally, it asserted set-off rights, but noted that the amounts could not be determined until it actually completed the work on the contracts breached by Davall.

Eight months later, G–Z filed a motion on procedural grounds to discharge the garnishment, which the trial court granted. However, on appeal, we vacated that order and remanded with directions to consider the merits of the motion. The trial court did so and entered judgment in favor of G–Z discharging the garnishment on the grounds that Flanders had failed to prove the existence of a garnishable debt owed to Davall by G–Z. This appeal followed.

The trial court found that Davall failed to complete any of its six contracts with G–Z, with the result that G–Z canceled one contract and performed that work itself and completed the work on the remaining five contracts, backcharging the costs to do so, plus related consequential damages, against Davall. It also found that all of Davall's contractual breaches occurred prior to the date of Flanders' garnishment of G–Z.

The court then concluded that G–Z had only a contingent, nongarnishable liability to Davall because: 1) Davall had not completed and was not performing under its contracts and therefore was not entitled to payment; 2) G–Z's obligation to pay Davall did not arise until G–Z had been paid by the Bureau of Reclamation; and 3) G–Z had a right to set-off its completion costs although the exact amount could not be calculated until work on the contracts was completed.

Flanders contends that G–Z's liabilities to Davall were not contingent, that G–Z failed to assert its alleged set-offs in a timely manner, and that the set-offs were neither necessary nor reasonable. It also asserts that it is inequitable to preclude Flanders from collecting from G–Z because ᴄ -Z was responsible for Davall's failure to complete its contracts. Finally, Flanders objects to the court's refusal to admit certain deposition testimony. G–Z seeks costs for defending a frivolous appeal.

I.

Flanders first argues that G–Z's obligations to Davall were not contingent. It claims that, based on certain documents in evidence, G–Z had admitted it owed money to Davall at the time the writ of garnishment was served. It further argues that because Davall had substantially performed its contractual duties under some of the contracts, it was entitled to recover on them. Flanders rejects G–Z's contention that it was not obligated to pay Davall until it had been paid by the Bureau of Reclamation, claiming that the "pay when paid" clause was not contained in those contracts which Davall had substantially performed. We reject these contentions.

■ Pursuant to C.R.C.P. 103 § 4(a), a judgment creditor may garnish any money owed a judgment debtor whether due at the time of service of the writ or to become due thereafter. If the debtor could bring an immediate action to recover the debt from the garnishee, then the debt is due within the meaning of the rule. *Martinez v. Dixon,* 710 P.2d 498 (Colo.App.1985). Contingent liabilities, however, are not garnishable. *Haselden Langley Constructors, Inc. v. Graybar Electric Co.,* 662 P.2d 1064 (Colo.1983).

■ Here, Davall had not substantially performed under several of its contracts with G–Z. Additionally, G–Z's alleged "admission" of debt was based on documents which showed only amounts G–Z would have owed Davall had it completed performance.

Furthermore, we find no merit in Flanders' argument that in *Baker v. Young,* 798 P.2d 889 (Colo.1990), the supreme court narrowed the rule that contingent obligations are not subject to garnishment. That case dealt with whether an insurer's obligation to indemnify and defend a nonresident insured was nonexempt property which could be attached to provide the basis for *quasi in rem* jurisdiction. Nowhere did the court suggest a narrowing of the contingent liability rule for garnishments.

Consequently, we agree with the trial court that, as to these contracts, G–Z's obligation to Davall was contingent and therefore was not garnishable. However, a question remains as to the contracts which Davall had substantially performed.

■ If a subcontractor substantially performs its contractual duties, it may recover the contract price minus damages for its failure to perform fully. *Denver Ventures, Inc. v. Arlington Lane Corp.,* 754 P.2d 785 (Colo.App.1988). However, under C.R.C.P. 103 § 10:

> Every garnishee shall be allowed to claim as a set-off and retain or deduct all demands or claims on the part of the garnishee against any party to the garnishment proceedings, which the garnishee might have claimed if not summoned as a garnishee, whether such are payable or

not at the time of service of any form of writ provided for by this rule.

■ Thus, even if we were to conclude that G–Z was liable to Davall on the substantially completed contracts, G–Z was entitled to assert its rights to set-off. Because these amounts were greater than what it arguably owed on the substantially completed contracts, it would have no liability to Davall.

Nevertheless, Flanders contends that G–Z is not entitled to the set-offs because it was untimely in asserting them. We disagree.

In *Colorado National Bank–Arvada v. Greaney,* 720 P.2d 611 (Colo.App.1986), this court addressed the timeliness of a claim to set-off a customer's bank account funds against a bank loan. We concluded that it was unreasonable to require a garnishee to claim a set-off immediately upon the service of the writ of garnishment and held that the more practical approach is to allow the same amount of time as was allowed for answering garnishment interrogatories.

■ In *Greaney,* there was no question as to the amount of set-off. Here, however, G–Z was unable to determine the exact amount of set-off until work on the contracts was completed. It asserted its claim shortly after it became apparent that the hearing on Flanders' traverse would be delayed. Furthermore, three times in the ensuing months, G–Z updated both Flanders and the court on the amount of its set-off claims as they became known.

Thus, G–Z made its claim to set-offs known as soon as it was practical and reasonable for it to do so under the circumstances. *Greaney* requires no more. Accordingly, we conclude that the court did not err in its determination that there was no garnishable debt owed by G–Z to Davall.

## II.

Flanders next argues that the amount of set-offs claimed by G–Z were unnecessary and unreasonable. It claims that G–Z had no contractual right to complete work un-

der four of the contracts, that it was improper for G–Z to deduct Davall's positive position in some contracts against its negative position in others, and that monies spent to complete work on a seventh contract, which G–Z discovered was incomplete after it had paid Davall, could not be set-off. Again, we disagree.

The measure of damages for breach of a construction contract is the sum which will put the damaged party in as good a position as it would have occupied if the contract had been performed. *Olson Plumbing & Heating Inc. v. Douglas Jardine, Inc.*, 626 P.2d 750 (Colo.App.1981).

If a subcontractor only partially completes its performance, the contractor is entitled to damages measured by the reasonable cost of completion plus any damages associated with the delay in completing the project. *Continental Bank & Trust Co. v. American Bonding Co.*, 605 F.2d 1049 (8th Cir.1979).

It is for the trial court to determine the amounts and reasonableness of the set-offs, *Colorado National Bank–Arvada v. Greaney, supra.*, and its findings will not be overturned absent an abuse of discretion. *Travelers Insurance Co. v. Wellman*, 721 P.2d 685 (Colo.1986).

The record supports the trial court's findings that G–Z's set-offs were reasonable and legitimate. Furthermore, regardless of the explicit language in the contracts, G–Z was entitled to be placed in as good a position as if Davall had performed. And, C.R.C.P. 103 § 10 expressly states that a garnishee may claim "all demands or claims" of the garnishee.

Accordingly, we agree with the trial court's determination that G–Z had a right to set-off the total costs incurred to remedy any non-performance or breaches of Davall in existence at the time of garnishment.

### III.

We find no merit in Flanders' assertion that because G–Z, in hiring Davall's former president, made it impossible for Davall to perform its contract, equity requires that G–Z not be discharged from the garnishment.

G–Z hired Davall's president only after he informed them that Davall was ceasing to operate, and there is nothing in the record to support Flanders' allegations that G–Z acted with unclean hands.

### IV.

Finally, we conclude that the court did not commit reversible error in refusing to admit the deposition testimony of G–Z's assistant comptroller.

A ruling excluding evidence constitutes reversible error if a substantial right of the party is affected. *Hancock v. State Department of Revenue*, 758 P.2d 1372 (Colo.1988). Error affects a right when it substantially influences the outcome of the case or impairs the basic fairness of the trial. *Banek v. Thomas*, 733 P.2d 1171 (Colo.1986).

Here, the comptroller testified at trial that the ledgers she kept represented amounts G–Z would have owed had Davall completed their contracts. She also testified that, in her deposition, she did not admit money was owed to Davall, but merely referred to amounts possibly owing. Consequently, her deposition testimony was, at best, cumulative and was properly excluded. *Johnson v. Board of County Commissioners*, 676 P.2d 1263 (Colo.App. 1984).

We conclude that there was neither an allegation nor an actual impairment of a substantial right of Flanders and that the trial court did not commit reversible error by excluding the deposition.

### V.

G–Z's claim that Flanders' appeal is frivolous is without merit.

Judgment affirmed.

PLANK and DAVIDSON, JJ., concur.