**D.R. HORTON, INC.-DENVER, d/b/a D.R. Horton–Trimark Series, Third–Party Plaintiff–Appellant,**

v.

**BISCHOF & COFFMAN CONSTRUCTION, LLC; Kiowa Creek Construction, Inc.; and Sprigg Construction, Inc., Third–Party Defendants–Appellees.**

No. 07CA2081.

Colorado Court of Appeals, Div. III.

July 9, 2009.

Holland & Hart, LLP, Marcy G. Glenn, Timothy W. Gordon, Ryan T. Bergsieker, Denver, Colorado, for Third–Party Plaintiff–Appellant.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, CO; Dean Neuwirth P.C., Dean Neuwirth, Denver, Colorado, for Third–Party Defendants–Appellees.

Pryor Johnson Carney Karr Nixon P.C., Bradley N. Shefrin, Greenwood Village, Colorado, for Amicus Curiae American Subcontractors Association.

Senn Visciano Kischenbaum P.C., Mark D. Gruskin, Denver, Colorado, for Amicus Curiae American Subcontractors Association Colorado.

Sullan[2], Sandgrund, Smith & Perczak, P.C., Ronald M. Sandgrund, Scott F. Sullan, Leslie A. Tuft, Denver, CO, for Amicus Curiae Homeowners Against Deficient Dwellings (HADD).

Opinion by Judge ROTHENBERG.[*]

Plaintiff, D.R. Horton, Inc.-Denver d/b/a D.R. Horton–Trimark Series (Horton), appeals the judgment entered on a jury verdict in favor of defendants, Bischof & Coffman Construction, LLC, Kiowa Creek Construction, Inc., and Sprigg Construction, Inc. (collectively, subcontractors), for breach of contract, indemnification for breach of contract, and indemnification for breach of warranty. Horton also challenges, as legally insufficient, the damages awarded to it for breach of warranty. We affirm.

## I. Background

This case arose from the construction of a new condominium complex in Castle Rock, Colorado. Horton was the general contractor on the project and hired numerous subcontractors, each of whom entered into a contract that included warranty provisions and an indemnification clause.

In 2004, the homeowners association for the condominiums sued Horton for alleged construction defects, and Horton filed third-party claims for breach of warranty, breach of contract, and indemnification against twenty-nine subcontractors involved in the project. All but three of the subcontractors settled with Horton.

On the evening before trial, Horton also settled with the homeowners, agreeing to pay them approximately $23.4 million attributable to the repair of the alleged defects. That sum was reached by allocating an amount to each individual subcontractor based on the damages for which they were responsible. As relevant here, the allocations were $899,379 to Bischof; $1,778,108 to Kiowa; and $3,121,835 to Sprigg.

Immediately after the settlement on the morning of trial, Horton requested a one to two week continuance to prepare its case in light of the settlement and filed two supplemental disclosures containing information about additional experts whom it intended to call as witnesses. Alternatively, Horton asked the trial court to bifurcate the indemnity claims. The subcontractors objected, arguing that Horton had access to the homeowners' witnesses before trial and that a continuance would create significant scheduling problems for their witnesses.

The trial court granted the subcontractors' motion to strike the information in the new disclosures, disallowed evidence of the amount of the settlement or its terms, and denied the request to bifurcate the indemnification claims. The court delayed the trial for two days, but began selecting a jury on the second day, in effect denying Horton's request for a continuance.

Following a lengthy trial, the jury returned verdicts for the subcontractors on the breach of contract and indemnification claims, but found for Horton on the breach of warranty claim. It awarded Horton damages of $3,500 from Bischof; $5,000 from Kiowa; and $9,500 from Sprigg.

Horton then moved for a new trial under C.R.C.P. 59, alleging that the damages awarded were inconsistent with the evidence.

---

[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

Alternatively, Horton requested that the trial court increase the damages award. The trial court denied the motion, reasoning as follows:

> [T]he damage evidence presented by Horton was contested as to amount and type. Experts and lay witnesses testified on this issue for both sides. The [c]ourt struck a portion of some of the damages claimed by Horton.... As such, there was much in controversy concerning the amount to be awarded for any claim. The jury listened intently to all of the evidence presented during the course of this five week trial. They certainly could have concluded that the damage claims of Horton were excessive and not supported by credible evidence. Given the nature of the verdicts; that Horton failed to establish a breach of contract, the jury could have concluded that the breach of warranty claims were minor. There certainly is no evidence, as suggested by Horton, that this determination was based on passion or prejudice or that the jury neglected the evidence.

Horton appealed. The subcontractors filed a cross-appeal but later voluntarily dismissed it.

■ Two amicus curiae briefs also were filed. One was filed by Homeowners Against Deficient Dwellings (HADD), in support of Horton, urging us to apply *Burlington Northern R.R. Co. v. Stone Container Corp.*, 934 P.2d 902 (Colo.App.1997), to the facts before us and to conclude the trial court erred in not admitting the settlement agreement. The second amicus curiae brief was filed by the American Subcontractors Association and the American Subcontractors Association Colorado, in support of the subcontractors. It maintains that the *Burlington* argument was raised in the trial court and rejected, but was not appealed by the parties and therefore was not preserved for appeal. We agree and do not address the applicability of *Burlington* to these facts. *See Gorman v. Tucker*, 961 P.2d 1126, 1131 (Colo.1998) ("We will not consider issues raised only by amicus curiae and not by the parties.").

## II. Evidence of Settlement

Horton contends the trial court abused its discretion in excluding evidence of the settlement between Horton and the homeowners. We disagree.

■ We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Scott v. Matlack, Inc.*, 39 P.3d 1160, 1170 (Colo.2002). A trial court does not abuse its discretion unless its decision is manifestly arbitrary, unreasonable, or unfair. *E-470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 23 (Colo.2000).

■ A party that does not comply with the disclosure deadlines in C.R.C.P. 26(a)(2) faces possible sanctions under C.R.C.P. 37(c), including the preclusion of any evidence that was not properly disclosed. *Cook v. Fernandez-Rocha*, 168 P.3d 505, 506 (Colo.2007).

C.R.C.P. 26(a)(2)(A) provides:

> In addition to the disclosures required by subsection (a)(1) of this Rule, a party shall disclose to other parties the identity of any person who may present evidence at trial, pursuant to Rules 702, 703, or 705 of the Colorado Rules of Evidence together with an identification of the person's fields of expertise.

C.R.C.P. 26(e) explains the requirements for disclosing further information:

> A party is under a duty to supplement its disclosures under section (a) of this Rule when the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the disclosure or discovery process.... With respect to experts, the duty to supplement or correct extends both to information contained in the expert's report or summary disclosed pursuant to section (b) of this Rule and to information provided through any deposition of or interrogatory responses by the expert. Supplementation shall be performed in a timely manner.

■ The purpose of C.R.C.P. 26(e) is to ensure that discovery information is provided early and is updated in a timely manner, thus

promoting accuracy, encouraging settlements, and avoiding surprises at trial. *See Morgan v. Genesee Co.*, 86 P.3d 388, 394, 396 (Colo.2004) ("[A] fundamental goal of the discovery rules is to encourage the fair, just, and prompt resolution of disputes through settlement.").

C.R.C.P. 37(c)(1) provides: "A party that without substantial justification fails to disclose information required by C.R.C.P. Rules 26(a) or 26(e) shall not, unless such failure is harmless, be permitted to present any evidence not so disclosed at trial or on a motion made pursuant to C.R.C.P. 56."

■ The trial court has a duty to sanction a party for failure to comply with discovery deadlines by precluding evidence or witnesses, unless the party's failure to comply is *either* substantially justified *or* harmless. *Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 975 (Colo.1999).

In *Todd v. Bear Valley*, 980 P.2d at 979, the supreme court addressed a comparable situation and stated:

We anticipate that cases may arise in which a party fails to make the expert witness disclosures required by Rule 26, lacks substantial justification for such failure, and yet seeks to be allowed to present such witnesses at trial. When these circumstances arise close to the trial date, it is likely that the failure to disclose will cause prejudice to the opposing party. As a practical matter, the trial court may then be faced with a choice between continuing the trial or sanctioning the non-disclosing party by precluding the witness.

*See also Trattler v. Citron*, 182 P.3d 674 (Colo.2008) (concluding exclusion of evidence was an appropriate sanction when the evidence was not properly disclosed).

■ Here, the trial court struck the information contained in the new disclosures, because it was untimely. The court stated:

The fact that disclosure occurred on the day before trial involving a new allocation of damages, as it relates to the third-party defendants, was not triggered by the third-party defendants. That was as a result of Horton settling with the plaintiffs. Never-

theless, those disclosures clearly are not timely.

The trial court apparently accepted the subcontractors' argument that allowing information about the newly disclosed settlement information would be unfairly prejudicial to them and that the settlement was not binding on them. The trial court also allowed the experts to testify about anything that had been disclosed to the subcontractors before the last minute disclosures and permitted evidence about the fact, but not the amount, of the settlement. The court acknowledged the public policy encouraging settlements, but noted that the indemnification claim was present from the beginning of the litigation and all the parties had time to prepare for it.

Although we may have reached a different conclusion, we perceive no abuse of discretion by the court in reaching its decision disallowing the evidence. Given our conclusion, we need not consider whether the evidence of the terms of the settlement was relevant.

### III. Breach of Warranty and Indemnity Instructions

Horton next contends the trial court's jury instruction and special interrogatory on its indemnity claim for breach of warranty misstated the elements required to prove such a claim. It maintains that it is entitled to a new trial on that claim because the trial court incorrectly instructed the jury that Horton must have suffered property damage before it could recover on its indemnity claim. Horton also contends that the trial court's indemnity clause instruction should have stated that the property damaged could belong to the homeowner, the contractor, or any third party. The subcontractors contend, among other things, that the issue was not adequately preserved by Horton. We agree with the subcontractors.

■ The purpose of requiring parties to preserve objections to jury instructions in the trial court is to "enable trial judges to clarify or correct misleading or erroneous instructions before they are given to the jury, and thereby prevent costs of retrials necessitated by obvious and prejudicial error." *Blueflame Gas, Inc. v. Van Hoose*, 679

P.2d 579, 586–87 (Colo.1984) (quoting *Scheer v. Cromwell*, 158 Colo. 427, 429, 407 P.2d 344, 345 (1965)). "A general objection that states no ground of error is the equivalent of no objection at all because it deprives the trial court of any meaningful opportunity to correct its own error." *Id.* at 587.

■ The issue regarding the proper construction of the indemnification clause first arose when the subcontractors moved for a directed verdict. In response, Horton asserted that the indemnity clause covered damages to the property, namely, the condominiums owned by the homeowners. The subcontractors responded that the damages at issue were repair costs, and not damages to the property that were covered by the indemnity clause. At trial, Horton cited to the portion of the transcript where its counsel stated, "With regard to the property damage issue that [subcontractors' counsel] raised, we would again reincorporate our arguments of yesterday for directed verdict."

However, the issue on appeal is whether the instruction should have specified that the property at issue can belong to the homeowner, the contractor, or any third party, not whether damages were limited to repairs. Thus, we are not persuaded that Horton's statements during the discussion about the directed verdict, or its reiteration of that discussion at trial, were sufficient to preserve an objection to the indemnification jury instruction.

Relying on *Blueflame*, 679 P.2d at 587, Horton also contends it preserved the issue by directing the court's attention to the legal question through a tendered instruction and two special interrogatories. We are not persuaded.

In *Blueflame*, the party objected to an instruction concerning the standard of care and pointed out that the correct standard of care was set forth in its tendered instruction. Contrary to Horton's contention, its action in tendering these interrogatories on indemnification were not sufficient to direct the trial court's attention to the legal question. The fact that a party's tendered instruction is rejected by the trial court does not necessarily mean that the party tendering the rejected instruction objects to the instruction ultimately given by the court.

The first instruction tendered by Horton related to Sprigg and provided in relevant part:

1. Are any of the claims in this lawsuit made on account of "damage to or loss of property, including the loss of use thereof ... in any way occurring, incident to, arising out of, or in connection with" any one of the following:

 2.a. A breach by Sprigg or its subcontractors of any of the warranties or covenants in the contract; or

 b. Work performed or to be performed by Sprigg or its subcontractors; or

 c. Any negligent action and/or omission of D.R. Horton related in any way to the work of Sprigg or its subcontractors, even if the loss is caused by the fault or negligence of D.R. Horton.

The second tendered interrogatory stated in relevant part:

1. Are any of the claims in this lawsuit made on account of "damage to, or loss of property, including the loss of use thereof ... in any way occurring, incident to, arising out of, or in connection with" any one of the following:

 a. A breach by [subcontractor] of any of the warranties or covenants in the contract; or

 b. Work provided by [subcontractor].

The trial court refused to give Horton's tendered interrogatories on the indemnity claim and gave the jury three identical instructions and interrogatories on the indemnification claim. Each instruction provided:

If you find that the Third Party Defendant [Sprigg, Kiowa, or Bischof] breached its contract with or warranties to Third Party Plaintiff D.R. Horton, or D.R. Horton was negligent with respect to the work performed by [the subcontractor], you should then consider the Third Party Plaintiff's separate claim under the indemnity clause of the contract.

For Third Party Plaintiff D.R. Horton to recover indemnity from Defendant[s], you must find that each of the following has

been proven by a preponderance of the evidence:

1. [Subcontractor] entered into a contract agreement with D.R. Horton;

2. The contract agreement contained an indemnification clause in which [subcontractor] agreed to indemnify D.R. Horton for losses arising from [subcontractor's] work;

3. *D.R. Horton suffered damage to or loss of property* including the loss of use of property in any way occurring, incident to, arising out of, or in connection with the work performed by [subcontractor].

If you find that all of these elements have been proven, then your verdict must be that [subcontractor] owes a duty to indemnify D.R. Horton. If you find that any element has not been proven then your verdict on this issue must be that [subcontractor] owes no duty to indemnify D.R. Horton.

(Emphasis added.)

Each interrogatory included a place under each element for the jury to answer "yes" or "no." For all three subcontractors, the jury answered "yes" to the first two elements and "no" for the third one, thus finding the subcontractors were not liable under the indemnification clause in the contract.

We have read the portions of the transcript relied upon by Horton, and we conclude the statements made by its counsel did not make it clear to the trial court that Horton was still objecting to the court's instructions regarding indemnification. As we read the transcript, the trial court appears to have been trying to accommodate counsel on this issue, and the parties appear to have acquiesced in the court's proposed instructions. At best, the transcript is ambiguous on this point.

We recognize that the trial court conducted an off-the-record conference to discuss jury instructions but we cannot speculate what occurred there, and we must presume that the record of that conference would support the trial court's ruling. *People v. Wells,* 776 P.2d 386, 390 (Colo.1989) ("Any facts not appearing of record cannot be re-

viewed. The presumption is that material portions omitted from the record would support the judgment." (citation omitted)).

Accordingly, we conclude this issue was not preserved for appeal.

■ We also reject Horton's alternative argument that the issue should be reviewed to prevent it from suffering "a manifest injustice." In *Blueflame,* 679 P.2d at 587, the supreme court held that an objection made by the plaintiffs' counsel "was too general in character to satisfy the requirements of C.R.C.P. 51." The court nevertheless elected to address the correctness of the instruction on its own motion "to prevent a manifest injustice to a litigant and to assure an appellate resolution of a controversy in accordance with correct principles of law." *Id.* The court explained that "[i]rrespective of the nonspecific nature of the objection to the instruction, [the instruction in question] implicated a critical aspect of the plaintiffs' strict liability claim and, as such, affected the substantial rights of the parties. C.A.R. 35(e)." *Id.*

Had Horton prevailed on its indemnity for breach of warranty claim, it would only be entitled to the costs and attorneys fees it could show it had incurred in connection with defending against claims attributable to these subcontractors. We therefore conclude the issue does not affect the substantial rights of the parties and does not justify appellate review where, as here, it was not properly preserved.

## IV. Breach of Contract Claim

Horton next contends the trial court improperly instructed the jury on the elements required to prove breach of contract, because the instruction required the jury to find the subcontractors did not substantially perform before it awarded Horton any damages. The subcontractors contend the instruction was correct, but argue alternatively that any error was harmless. We conclude that the instruction was erroneous but that the error was harmless.

### A. Was the Issue Preserved?

Contrary to the subcontractors' contention, we first conclude this issue was properly preserved by Horton's objection and its tendered instruction on substantial performance.

▆ Where an objection sufficiently directs the court's attention to the asserted error, the issue is preserved for appeal. *Blueflame,* 679 P.2d at 586–87.

### B. Was the Instruction Erroneous?

▆ "We review jury instructions de novo to determine whether the instructions as a whole accurately informed the jury of the governing law. A trial court's decision to give a particular jury instruction is reviewed for abuse of discretion." *Fishman v. Kotts,* 179 P.3d 232, 235 (Colo.App.2007).

Here, the trial court gave the following instruction on breach of contract, one for each of the subcontractors:

For the Third–Party Plaintiff, D.R. Horton, Inc.—Denver to recover from Third–Party Defendant [Sprigg, Kiowa, or Bischof] on its claim of breach of express contract, you must find all of the following have been proved by a preponderance of the evidence:

1. Third–Party Defendant [subcontractor] entered into a contract with the Third–Party Plaintiff D.R. Horton to perform work in a good and workmanlike manner, in accordance with the plans, specifications and instructions of Third–Party Plaintiff; and

2. That Third–Party Defendant failed to substantially perform work in a good and workmanlike manner, in accordance with the plans, specifications and instructions of Third–Party Plaintiff; and

3. That Third–Party Plaintiff performed its part of the contract.

The jury was also given special interrogatories that asked, as relevant here, whether the "Third–Party Defendant ... fail[ed] to substantially perform work in a good and workmanlike manner." The jury was further instructed that if it did not answer yes to all three elements, it was to find for the subcontractor listed in that interrogatory.

A separate instruction defined "substantial performance," as follows:

A party has "substantially performed" or "substantially complied with" the terms of a contract if anything that was changed or not done according to the exact terms of the contract was minor, and the other party received substantially what he or she contracted for.

Horton's tendered instruction stated:

A party has "substantially performed" or "substantially complied with" the terms of a contract if anything that was changed or not done according to the exact terms of the contract was minor, and the other party received substantially what he or she contracted for.

*The fact that one may have rendered substantial performance does not mean that that party has not breached the contract and is not, therefore, liable for any damages.*

(Emphasis added.)

Relying on *Western Distributing Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo.1992), the trial court rejected Horton's tendered instruction. We conclude the court's reliance on *Diodosio* was misplaced.

In *Diodosio,* the supreme court addressed an employment contract and reiterated the elements of a breach of contract claim as (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *Id.* at 1058. The court concluded the plaintiffs-employees were required to prove they substantially performed on the contract in order to prevail on their breach of contract claims. However, the court did not clarify whether it was discussing the requirement of performance by the *plaintiff* or the failure to perform by the *defendant.*

In *Newcomb v. Schaeffler,* 131 Colo. 56, 62–63, 279 P.2d 409, 412 (1955), the supreme court discussed substantial performance in the context of a builder and a homeowner. It stated:

Where a builder has undesignedly violated the strict terms of his contract, and the owner has received and retained benefit of builder's labor and material, and builder is ready to remedy defects which are trivial and slight, there is substantial compliance and the owner is entitled to such damages as will supply the material and labor required to put the structure in condition called for.

*Newcomb* thus suggests that the builder's substantial performance does not act as a complete bar to recovery by the owner. Rather, the owner may still be entitled to some damages.

Furthermore, a trial court should instruct the jury in accordance with the Colorado Jury Instructions to the extent they are consistent with the prevailing law. C.R.C.P. 51.1. The pattern jury instruction entitled Breach of Express Contract—Elements of Liability provides in pertinent part:

[Y]ou must find (all)(both) of the following have been proved by a preponderance of the evidence:

1. The defendant entered into a contract with the plaintiff to (insert the alleged promise on which plaintiff is suing); and

2. The defendant failed to (insert the alleged promise on which the plaintiff is suing).

3. *The plaintiff (substantially) performed* (his)(her)(its) part of the contract. . . .

CJI–Civ. 4th 30:1 (2007)(emphasis added).

The element regarding the plaintiff's performance uses the term "substantial performance," and the notes on use in the pattern jury instruction on the definition of substantial performance state: "The fact that one may have rendered substantial performance does not mean that that party has not breached the contract and is not, therefore, liable for any damages." CJI–Civ. 4th 30:7 n. 1 (2007). The notes cite *Diodosio* and add that "[g]enerally, performance or substantial performance by the plaintiff is a condition precedent to the right to recover on the contract." *Id.* n. 3.

 In this case, the trial court's instruction erroneously informed the jury that, if they found the subcontractors had substantially performed under the contract, Horton could not recover any damages for breach of contract. In other words, the trial court made substantial performance a complete bar to Horton's recovery.

## C. Was the Error Harmless?

 The court must order a new trial when the result of the trial may have been different if the court had given the proper instruction. *Clyncke v. Waneka,* 157 P.3d 1072, 1079 (Colo.2007); *Williams v. Chrysler Ins. Co.,* 928 P.2d 1375, 1378 (Colo.App.1996).

 "The measure of damages for breach of a construction contract is the sum which will put the damaged party in as good a position as it would have occupied if the contract had been performed." *Flanders Elec. Motor Service, Inc. v. Davall Controls & Eng'g,* 831 P.2d 492, 496 (Colo.App.1992). In the context of substantial performance, "[i]f a subcontractor only partially completes its performance, the contractor is entitled to damages measured by the reasonable cost of completion plus any damages associated with the delay in completing the project." *Id.*

 The jury here found that the first and third elements required in the breach of contract instruction were satisfied, but that Horton had failed to prove the subcontractors did not substantially perform under the contract. Nevertheless, we conclude the error was harmless, because the jury awarded Horton damages for breach of warranty.

In *Glisan v. Smolenske,* 153 Colo. 274, 281, 387 P.2d 260, 263 (1963), the supreme court discussed the measure of damages in a breach of warranty case arising from a construction contract:

Ordinarily, the measure of damages recoverable for a breach of warranty is the difference between the actual value of the property at the time of sale and what its value would have been if it had been as warranted. *But where the buyer has retained the property and uses it, as here, he may make reasonable expenditures to bring the property into conformity with*

*the warranty,* and such expenditures may represent the measure of the buyer's damages—another way of arriving at this difference in value. The latter application was appropriately used in this case.

*Id.* (citations omitted, emphasis added); *see Hoagland v. Celebrity Homes, Inc.,* 40 Colo. App. 215, 217, 572 P.2d 493, 494 (1977).

■ The measure of damages in breach of construction contract cases where there has been substantial performance is the reasonable cost of completion plus any damages associated with the delay in completing the contract. *Flanders Elec. Motor Service,* 831 P.2d at 496; *General Ins. Co. v. City of Colorado Springs,* 638 P.2d 752, 759 (Colo. 1981) ("Where a breach results in unfinished construction and the loss in value to the injured party is not proved with sufficient certainty, the injured party may recover damages based on '(a) the diminution in the market price of the property caused by the breach, or (b) the reasonable cost of completing performance or of remedying the defects if that cost is not clearly disproportionate to the probable loss in value to him.'" (quoting Restatement (Second) of Contracts § 348(2))).

At trial, all of the parties focused on the cost of repairing the defects allegedly attributable to the subcontractors, and in its C.R.C.P. 59 motion, Horton asserted that the verdicts on breach of warranty and breach of contract claims were inconsistent because "[a] breach of warranty claim necessarily constitutes breach of [c]ontract." Horton added: "[T]he proper measure of damages on breach of contract or breach of warranty is the amount that would place Horton in the same position had the breaches not occurred. In fact, an instruction was given so that duplicative damages would not be awarded on these claims."

On appeal, Horton contends that there are "difference[s] between [the subcontractors'] obligations under the contract as a whole, and their obligations under the warranty clause alone" and that "the potential breach of contract and breach of warranty damages also were different." But Horton does not explain, and we fail to perceive, what defects arose from the subcontractors' breach of warranty that were different from their alleged breach of contract.

Thus, while the damages awarded for breach of warranty and breach of contract are not necessarily the same in every case, we conclude that they were in this case, and that an award of additional damages for breach of contract would be duplicative. Indeed, it appears the jury followed the court's instructions by awarding damages against the subcontractors for breach of warranty, but did not duplicate those damages by awarding additional damages for breach of contract.

We therefore conclude any error by the trial court in instructing the jury on the elements required to prove breach of contract was harmless.

## V. Damages for Breach of Warranty

Horton next contends the trial court abused its discretion in denying its motion for a new trial on damages. According to Horton, the damages award on the breach of warranty claim was grossly inadequate because the subcontractors' witnesses admitted the subcontractors were responsible for some of the damages, and Bischof's own expert on damages stated it would cost $86,892 to repair those problems. We disagree.

■ We review a trial court's decision to grant or deny a motion for a new trial based on inadequate damages for an abuse of discretion. *Steele v. Law,* 78 P.3d 1124, 1127 (Colo.App.2003). "A reviewing court should overturn a jury verdict on damages only upon a showing that the jury's action was arbitrary and capricious or that the jury was swayed by passion or prejudice." *Id.; see Lehrer v. Lorenzen,* 124 Colo. 17, 20–21, 233 P.2d 382, 383–84 (1951) (holding it was "an abuse of discretion on the part of the court to set aside the verdict of the jury and grant a new trial solely on the ground of inadequacy of the verdict unless, under the evidence, it can be definitely said that the verdict is grossly and manifestly inadequate, or unless the amount thereof is so small as to clearly and definitely indicate that the jury neglected to take into consideration evidence of pecuniary loss or were influenced either by

prejudice, passion or other improper considerations").

■ "The amount of damages is within the sole province of the jury, and an award will not be disturbed unless it is completely unsupported by the record." *Jackson v. Moore,* 883 P.2d 622, 625–26 (Colo.App.1994); *see Husband v. Colorado Mountain Cellars, Inc.,* 867 P.2d 57, 60 (Colo.App.1993) ("[I]f the damages awarded defendant can be supported under any legitimate measure for damages, we may not overturn that award.").

■ It is also well settled that a jury may reject even uncontroverted expert or lay testimony as unreliable. *McWilliams v. Garstin,* 70 Colo. 59, 61, 197 P. 246, 246 (1921) ("The weight to be given to opinion evidence is for the jury. The judgment of experts, even when unanimous and uncontroverted, is not necessarily conclusive on the jury."); *see Harris Group, Inc. v. Robinson,* 209 P.3d 1188, 1202 (Colo.App. 2009) ("Juries are not required to accept expert testimony, and they may base their award of damages on other evidence in the record."); *Kim v. Grover C. Coors Trust,* 179 P.3d 86, 97 (Colo. App.2007) (same); *Quintana v. City of Westminster,* 56 P.3d 1193, 1198 (Colo.App.2002) (same).

Horton nevertheless relies on several early cases in which damages awards were set aside on appeal. *See Kistler v. Halsey,* 173 Colo. 540, 543, 481 P.2d 722, 723 (1971); *Denton v. Navratil,* 170 Colo. 158, 161, 459 P.2d 761, 762 (1969); *Staples v. Langley,* 148 Colo. 498, 502–03, 366 P.2d 861, 863 (1961); *Shirley v. Merritt,* 147 Colo. 301, 307–08, 364 P.2d 192, 197 (1961); *Weicker Transfer & Storage Co. v. Denver, Colorado Springs Pueblo Motorway, Inc.,* 128 Colo. 306, 308, 261 P.2d 1015, 1016 (1953).

However, the supreme court concluded in all of these cases that the damages awarded could not be reconciled with the undisputed testimony of the experts from both parties. Here, as discussed below, the expert testimony regarding the extent of the damages attributable to the subcontractors was hotly contested.

Furthermore, the vitality of these early decisions has been eroded by the supreme court's decision in *Lee's Mobile Wash v. Campbell,* 853 P.2d 1140 (Colo.1993). There, the supreme court upheld an award of zero noneconomic damages to a motorist injured in a car accident, even though the parties stipulated that the motorist had met the threshold in medical expenses and the jury had found causation and injury. The court stated:

> Since the evidence is conflicting, a reviewing court should not disregard the jury's verdict, which has support in the evidence, in favor of its own view of the evidence. Rather, the court's duty is to reconcile the verdict with the evidence if at all possible. If there is any basis for the verdict, it will not be reversed for inconsistency.

*Id.* at 1143.

In *Lee's Mobile Wash,* 853 P.2d at 1145, the supreme court expressly overruled *Villandry v. Gregerson,* 824 P.2d 829 (Colo.App. 1991), which had relied in part on *Staples v. Langley.*

In *Villandry,* a division of this court set aside a jury verdict of zero, concluding that if a plaintiff was injured in an automobile accident and had incurred more than $2,500 in reasonably necessary medical bills (thus meeting the threshold requirements of Colorado's No–Fault Act), a jury verdict of zero was inconsistent with the other jury instructions and the damages award could not stand. 824 P.2d at 832.

The division in *Villandry* reasoned:

> [B]y not contesting whether plaintiff met these threshold requirements, defendant has effectively conceded that the requirements were met, i.e. plaintiff has a permanent disability or has incurred $2,500 in reasonably necessary medical/rehabilitation expenses. In most instances, a defendant who does not contest whether plaintiff met the threshold requirements is also implicitly conceding other damages which are usually attendant to those necessarily involved in meeting the threshold, i.e., inconvenience, loss of time, etc.

824 P.2d at 831.

In *Lee's Mobile Wash,* the supreme court disagreed, stating:

This statement by the court of appeals is an unwarranted assumption. Under this view, almost every plaintiff claiming physical injury also will be able to recover compensable noneconomic damages without further proof—either the factual determination of whether such damages have even been incurred is taken away from the jury or the defendant is subject to a heavy burden of proof which it before did not have to sustain. We do not approve of such a presumption with its concomitant erosion of the jury's responsibility, nor of the shifting of the burden of proof to the defendant. The fact that a plaintiff may or should be able to prove noneconomic losses in many or most cases in which the threshold for medical expenses has been reached does not mean that the plaintiff actually will prove or has proven noneconomic damages in any particular case. Circumstances vary as does the proof presented in each case.

853 P.2d at 1143.

In *Steele v. Law,* 78 P.3d 1124, 1126 (Colo. App.2003), the plaintiff alleged that she suffered injuries when her car was struck from behind by the defendant's car. The jury found the defendant was negligent and awarded the plaintiff $12,000 for permanent physical impairment, but *no damages* for economic loss or any other noneconomic loss. The trial court denied the plaintiff's motion for new trial on the damages issues, reasoning that "the jury could easily have concluded that the [p]laintiff suffered only very minor injuries from a low impact collision and that many of her medical and pain and suffering damages were not at all caused by the accident, and those that were resolved within a year." *Id.*

Relying on *Lee's Mobile Wash,* a division of this court upheld the trial court's ruling, stating:

[T]he jury's failure to award any economic damages or any noneconomic damages other than for permanent physical impairment reflects neither arbitrary action nor a disregard of the evidence. From the evidence presented, the jury reasonably could have found that any pain and suffering, inconvenience, emotional stress, or impairment of quality of life plaintiff suffered as a result of the accident was de minimis. [T]he jury could have credited the testimony of the defense expert who opined that plaintiff's injury was similar to the strain a sedentary person would experience after raking leaves in the yard and that it quickly resolved without need for medical intervention. In addition, the jury could have reasonably found from the evidence that plaintiff had not incurred any allowable loss of earnings or medical expenses.

*Steele v. Law,* 78 P.3d at 1127.

Here, the trial court found, and we agree, there is no evidence the jury was influenced by prejudice, passion, or other improper considerations. But the record contains evidence that Horton's experts substantially inflated the damages and the cost of repairs attributable to these three subcontractors.

For example, Horton's damages expert, Edward Fronapfel, testified that it was necessary to install a new ThermoPly layer on all of the buildings worked on by these three subcontractors, which would have required removing and re-installing all of the siding.

However, Bischof's expert witness, Daniel Wilkins, testified that removal of the siding was an unnecessary expense. When asked whether he believed "that all the siding that's on the projects needs to be removed or replaced," Wilkins answered: "Absolutely not. I said just the opposite.... None of the siding needs to be removed, save those few areas above round tops where there's some ThermoPly missing." Wilkins also disputed the testimony of Horton's experts in other areas. According to Wilkins, a majority of the windows on the six buildings that Bischof had framed were installed properly. He also testified that some of the problems attributed to the subcontractors were "a grading issue, not a framing issue."

Sprigg's expert, A. James Royston, also disagreed with Fronapfel's opinion regarding the need to remove the siding on the buildings. Royston stated: "It's just mind-boggling ... to rip all the siding off this to put another skin below it and put the siding back on." He testified, "The siding was sound and

intact pretty much throughout the complex. There were some areas that were probably approaching the need for maintenance, particularly caulking. But I didn't see any substantial degradation in the field of the siding." Royston also stated that some of the problems Horton's experts had attributed to the siding contractors were design issues and he described other alleged defects as "very, very minor."

Another of Horton's expert witnesses, John S. Hope, gave an estimate of the repairs recommended by Fronapfel, and admitted that his estimate of the repairs included an engineering fee of $585,000. When asked to explain the need for that sum, he stated, "I don't do engineering work," and "I've been instructed to add engineering to my estimate." Hope also testified that less than 59% of his estimated costs were for "hard costs" and that he had added an additional 7.5% for "general conditions," 20% for "markup," and 10% for "contingencies." And, when counsel for one of the subcontractors asked if "there proved to be no unforeseen conditions" and the estimated money was not spent, whether it would be "returned to the person that's paid it," Hope answered, "That is outside of my realm of experience."

Horton points out that Bischof's managing partner, John Coffman, admitted that there were "some specific instances that was [sic] not good work" and that he also saw code violations. However, another of Bischof's expert witnesses, Richard Freske, testified that the buildings "do not have meaningful deviations from the building code. They don't have things that cause buildings to fall down or to leak excessively. *They do have little, minor imperfections.*" (Emphasis added.)

Horton relies heavily on Freske's testimony that the reasonable cost "to repair the problems identified by [Daniel Wilkins] in his report on these buildings by Bischof and Coffman [was] $86,829." But Freske also testified that he had not "independently verified any of these defects that are being asked to be costed for repair by [Wilkins]."

Sprigg presented an expert witness, Kenneth Murphy, who estimated that it would cost $134,743 to make the repairs allegedly attributable to Sprigg *if such repairs were*

*needed.* But Murphy did not concede the work requested by Horton was needed, and he listed various repairs and costs and presented those costs separately in his testimony.

Kiowa's liability expert and president, Allen G. Thurman, testified regarding the repairs allegedly needed on the nine buildings that Kiowa had framed. While he agreed there were defects in Kiowa's work, he did not quantify the costs of repairing those defects.

We therefore conclude the jury had reason to base its award of damages "on other evidence in the record" aside from the damages testimony offered by Horton. *Harris Group, Inc. v. Robinson,* 209 P.3d at 1202; *see Lee's Mobile Wash,* 853 P.2d at 1143–44.

Nor are we persuaded by Horton's contention that the subcontractors' attorneys made judicial admissions during their closing arguments regarding the amount of damages.

■ "A judicial admission is a formal, deliberate declaration which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute." *People v. Bertagnolli,* 861 P.2d 717, 720 (Colo.1993) (quoting *Kempter v. Hurd,* 713 P.2d 1274, 1279 (Colo.1986)).

Some states have held that statements made by counsel during an opening or closing statement may not result in a judicial admission. *See Parkerson v. Nanton,* 876 So.2d 1228, 1230 (Fla.Dist.Ct.App.2004) (declining to adopt rule that statements of counsel made during opening and closing arguments may constitute a judicial admission; under Florida law, absent a stipulation, statements of counsel not made under oath are not evidence). And, at least one state has refused to apply the rule to counsel's statements regarding damages. *See Williams v. Cahill,* 258 Ill.App.3d 822, 826, 196 Ill.Dec. 331, 629 N.E.2d 1175, 1179 (1994) ("The parties do not cite, nor are we aware of, any Illinois case where a judicial admission was found with respect to a statement by an attorney during closing argument concerning damages. Viewing the plaintiff's counsel's

comments in context, we find that they were in effect no more than an opinion and should not be considered a binding admission.").

Other states have acknowledged that such statements may result in a judicial admission, but have applied the rule strictly and have held that where there is ambiguity or doubt, it is generally presumed that counsel did *not* intend to make a judicial admission during his or her statement. *See Lystarczyk v. Smits*, 435 N.E.2d 1011, 1014 (Ind.Ct.App. 1982); *Baxter v. Gannaway*, 113 N.M. 45, 50, 822 P.2d 1128, 1133 (N.M.Ct.App.1991).

In *Walter v. Wal–Mart Stores, Inc.*, 748 A.2d 961, 967 (Me.2000), the Maine Supreme Court stated, "[T]o be considered a judicial admission the statements must be deliberate, clear, and unambiguous. When made in an opening statement, the alleged judicial admission must be considered in the context of the entire statement. The statement [also] must be unequivocal and pertain to a factual matter." *Id.* (citations omitted).

In *Walter*, counsel for Wal–Mart admitted during opening statement that an error was made by its pharmacist in misfiling a customer's prescription with the wrong chemotherapy drug. Nevertheless, the court concluded that counsel's statement, "taken in its entire context," was not a judicial admission of negligence, because "[w]hile Wal–Mart appears to concede that there was no fault on the part of [the plaintiff], [his] delay in obtaining [a] blood test render[ed] the concession ambiguous." *Id.*

*Tunender v. Minnaert*, 563 N.W.2d 849, 853 (S.D.1997), is instructive. That case involved an automobile accident in which the plaintiff's vehicle was struck from behind by an automobile operated by the defendant. After the jury awarded the plaintiff zero damages, the trial court granted the plaintiff a new trial based on defense counsel's statement:

[The plaintiff] simply does not deserve a great deal of damages for a soft tissue injury.

I would submit to you he does, however, deserve some compensation and that compensation would be in the amount of $10,000. It was a simple rear end fender bender, and that's all he deserves from this accident.

The trial court reasoned that the jury "did not follow the evidence" because the admissions of a soft tissue injury and entitlement to compensation "almost required the jury to return a verdict for some amount." *Id.* at 851.

The South Dakota Supreme Court reversed the trial court, concluding defense counsel's statement was *not* a judicial admission. The supreme court stated:

The language of a party or the attorney should be construed in view of the purpose for which it is used and in connection with the surrounding circumstances and statements. Here the statement was made in closing argument. The trial court had already instructed the jury that the final arguments "are not evidence." However, the jury was also informed "an admission of fact by an attorney for a party is binding on that party." Having been so instructed, the jury returned a verdict for the defendant ... thus finding the statement not to be an admission.

*Id.* at 853–54 (citation and footnotes omitted); *see Hayes v. Xerox Corp.*, 718 P.2d 929 (Alaska 1986) (concluding defense attorney's statement during closing argument in a negligence case which conceded the plaintiff's injuries and sought to estimate the amount the jury should award was an expression of an opinion and not a judicial admission); *Bales v. Shelton*, 197 Ga.App. 522, 523, 399 S.E.2d 78, 80 (1990) (defense counsel's assertion during closing argument to the effect that the plaintiff had a herniated disc and that a fair figure for the verdict would be $20,000 was *not* a judicial admission, "but merely counsel's opinion or conclusion in the nature of an assessment," and court upheld damages verdict of $1500); *State ex rel. Missouri Highway & Transp. Comm'n v. Union Terminal Ry.*, 633 S.W.2d 429, 431 (Mo.Ct.App. 1982) (rejecting argument in condemnation case that counsel's comments during closing argument constituted judicial admissions; counsel's statements urging the jury to award $37,600 because "I think [one of the defendant's] damages are accurate" and "I think $37,600 is all the state should have to

expend for that" were *not* clear and unequivocal admissions that the state owed appellant $37,600, nor did they "concede the truth of some alleged fact"); *Baxter v. Gannaway,* 113 N.M. at 50, 822 P.2d at 1133 (court found no judicial admission where defense counsel in his closing argument "repeatedly told the jury that [the] defendants were responsible for [the] plaintiff's pain resulting from the first accident" and also stated that there was medical evidence of 5% impairment "or less" and "whatever you put the value of the impairment, we owe that"; court added that "[d]efense counsel's suggestions to the jury during closing as to what he thought defendant owed should not be viewed as judicial admissions"); *Hedge v. Bryan,* 425 S.W.2d 866, 868–69 (Tex.Civ.App.1968) (court concluded there was no judicial admission where defense counsel told the jury during closing argument the evidence was such that he felt the jury was required to answer "We do" to an instruction asking if the plaintiff suffered damages; court concluded counsel's statements were not "clear, deliberate, and unequivocal," were contradicted in other portions of his argument, and "were nothing more than an opinion based upon the evidence adduced by [the plaintiffs] and as such did not amount to a stipulation or a statement of fact").

In *Larson v. A.T.S.I.,* 859 P.2d 273, 275 (Colo.App.1993), a division of this court held that, where liability was admitted, and the only issue at trial was whether and to what extent the plaintiff had suffered injuries, defense counsel's acknowledgement during closing argument that the plaintiff had sustained some pain from the accident was a binding admission because it was both unambiguous and related to a question of fact.

Relying on *Childs v. Franco,* 563 F.Supp. 290 (E.D.Pa.1983), the division in *Larson* reversed the jury's verdict in favor of defendant, concluding that monetary damages, even a nominal amount, should have been awarded to the plaintiff. The division reasoned, "[D]efense counsel's statement was unequivocal and pertained to a factual matter. It was not phrased as a statement of opinion, but rather, was declaratory in nature." *Larson,* 859 P.2d at 276.

However, in *Anderson v. Watson,* 929 P.2d 6, 9 (Colo.App.1996), *aff'd,* 953 P.2d 1284 (Colo.1998), a division of this court rejected the plaintiff's contention that a statement by defense counsel was "unequivocal when considered within the context of the entire closing argument." Defense counsel stated, "Pain and suffering. In this case, the medical evidence says eight months." But the division pointed out that the statement was made shortly after the following argument by counsel:

> Pain and suffering. The Judge has instructed you the plaintiff is only entitled to damages for pain and suffering if that pain and suffering was caused by this accident. That's a difficult question, isn't it? Especially in light of her previous employer's testimony that she was always wearing braces; that it was something new every week. Perhaps ... her emotions are all tied up in her pain and suffering, and I think the records probably reflect that has been the case for a long time.
>
> But pain and suffering—any award for pain and suffering has to be reduced by that amount ... that you feel, first, resulted from her failure to wear a seat belt.... Any award has to be reduced by what pain and suffering was not caused by this accident. Those are the pre-existing conditions....
>
> What other evidence is there of pain and suffering? We have heard evidence from the doctors that she went ten months without any treatment and that when they last saw her in June, she didn't have any pain. That's quite inconsistent ... with the story we just heard from plaintiff's counsel.
>
> I would suggest, ladies and gentlemen, that a very small award, *if any,* for the few months that she was treating for her shoulder is all that should be awarded there, because I think it's been shown.

*Id.* at 10–11 (emphasis added).

In *Gordon v. Benson,* 925 P.2d 775 (Colo. 1996), the Colorado Supreme Court rejected the plaintiff's argument that defense counsel made a binding judicial admission during his argument in support of the defendant's tendered instruction on comparative negligence that no direct evidence existed to support a

comparative negligence instruction. The plaintiff contended that the defendant "had to assert comparative negligence in the theory of the case instruction in order to preserve the affirmative defense of comparative negligence" and the defendant's "failure to object to the theory of the case instruction as written, which made no mention of comparative negligence, constituted a waiver of any right to a comparative negligence instruction." 925 P.2d at 781. The supreme court disagreed, concluding the statement made by defense counsel was not a judicial admission:

> The statement by [defense counsel] was not a deliberate declaration for the purpose of dispensing with proof of a formal matter about which there was no dispute. To the contrary, this was a statement regarding the facts that were in dispute and how the evidence concerning those facts could be interpreted by a jury. [Defense counsel] simply suggested a possible version of the facts that the jury could choose to believe. He even used words that express uncertainty, such as "possibly" or "probably." Taken in context, counsel's statement that "nobody has directly testified about that" simply recognized that in order to find that both vehicles were in motion at the time of the collision the jury would have to believe parts of various witnesses' testimony and disbelieve other parts, as it had the power to do.

*Id.*

We conclude that, as in *Gordon v. Benson*, 925 P.2d at 781, the closing arguments made by the subcontractors' counsel here were merely statements "regarding the facts that were in dispute and how the evidence concerning those facts could be interpreted by [the] jury." Unlike in *Larson*, the statements were ambiguous and expressed counsel's view of how the jury should resolve the disputed evidence. Sprigg's counsel denied that Sprigg breached the contract or warranty, and argued that Horton's evidence regarding the damages attributed to Sprigg was unreliable. Counsel asserted that, out of 800 windows installed by Sprigg, only one or two actually leaked, and added: *"If you decide* that's part of our contract ... then you ought to find that against us." (Emphasis added.) He also stated: "We've fessed up to the real part of their case, or at least indicated that it's our responsibility.... But [Horton] want[s] to turn that into a gold mine."

Likewise, Bischof's counsel told the jury during closing argument, "I don't think any of the particular [subcontractors] are denying there's some stuff that wasn't done as well. But you know what? We believe overall this work substantially complied with the contracts that were entered into by all of our clients in this case."

Kiowa's counsel stated during closing argument that Kiowa's *maximum* responsibility was in the same range of the numbers testified to by the experts called by Bischof and Sprigg.

Counsel for the subcontractors pointed out that the damages were disputed as to amount and type, and that each party had presented several witnesses to discuss repairs, damages, and responsibility for the defective work. Counsel also suggested a range of damages that the jury could consider *if it found liability.* We therefore agree with the subcontractors that the arguments made and the figures that the subcontractors' counsel suggested to the jury, viewed in context, constituted "a ceiling and not a floor."

Accordingly, we reject Horton's contention that the subcontractors made judicial admissions regarding the amount of damages.

In summary, we conclude the record supports the trial court's finding that the jury heard extensive testimony from multiple experts using different calculations about the repairs needed and the cost of those repairs. Therefore, the trial court did not abuse its discretion in determining that the issue of damages was disputed and was for the jury to decide, and in denying Horton's motion for a new trial on damages on its breach of warranty claim.

## VI. Sanctions

Finally, Horton contends the subcontractors' motion for limited remand to clarify

statements that were made during an off-the-record hearing on jury instructions was groundless and frivolous, that the filing of the motion violated C.R.C.P. 11, and that we should impose sanctions. We do not view any of the parties' arguments as frivolous, groundless, or vexatious. We decline to order the limited remand and also decline to award sanctions.

The judgment is affirmed.

Judge DAILEY and Judge MILLER concur.