25CA0129 Ellis v Bartimmo 05-28-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0129
Boulder County District Court No. 21CV30092
Honorable Michael Kotlarczyk, Judge

---

Donald H. Ellis,

Plaintiff-Appellant,

v.

Madison G. Bartimmo,

Defendant-Appellee.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE LUM
J. Jones and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

---

Taussig & Smith, P.C., John G. Taussig, III, Elaine T. Corey, Scott D. Smith, Denver, Colorado; The Paul Wilkinson Law Firm LLC, Nelson Boyle, Denver, Colorado; Debbie Taussig Law, LLC, Deborah L. Taussig, Boulder, Colorado, for Plaintiff-Appellant

Montgomery Amatuzio, Brendan O. Powers, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1 Plaintiff, Donald H. Ellis, appeals the district court's denials of his motions for a directed verdict, judgment notwithstanding the verdict, additur, and a new trial. We reverse and remand for a new trial on economic damages.

## I. Background

¶ 2 Ellis sued defendant, Madison G. Bartimmo, for serious injuries he sustained in a motor vehicle-pedestrian accident. Immediately after the accident, paramedics transported Ellis to the emergency room in Boulder by ambulance. After arriving at the hospital, Ellis was airlifted by helicopter to a Level I trauma center in Denver, where he received emergency surgery and care for several days. Following a week of intensive treatment, doctors transferred Ellis to a rehabilitation hospital where he learned to sit, stand, and walk again. Ellis later had another surgery after hardware from the earlier surgery broke.

¶ 3 Bartimmo admitted liability for Ellis's injuries but disputed the amount of damages. At trial, Ellis's counsel introduced deposition testimony from two orthopedic surgeons who described Ellis's injuries, medical treatment, and surgeries. Ellis also testified about his medical bills, and a summary of those bills was admitted into

evidence under CRE 1006 without objection. The summary showed that Ellis had incurred $373,252.47 in medical expenses. Bartimmo didn't contest the amount of medical expenses Ellis incurred or the necessity of the medical procedures, though he argued in closing that Ellis hadn't met his burden to show that the medical expenses were reasonable.

¶ 4 At the conclusion of the evidence, Ellis's counsel moved for a directed verdict on the uncontroverted amount of past medical damages. The district court noted that the testimony and bill summary exhibit were some evidence of reasonableness and necessity but denied Ellis's motion. The jury returned a verdict for Ellis for $45,000 in economic damages; $65,000 in noneconomic damages; and $120,000 in physical impairment/disfigurement damages.

¶ 5 Ellis's attorney moved for post-trial relief under C.R.C.P. 59, arguing that the jury failed to make him whole when it awarded only $45,000 for his past care and treatment expenses. The motion requested that the court (1) enter judgment notwithstanding the verdict (JNOV) and increase the economic damages to the full amount of his incurred medical expenses; and (2) order additur of

"$328,252.47 to noneconomic damages and physical impairment damages, combined." In the alternative, the motion requested a new trial on all damages.

¶ 6 The sixty-three-day period for the district court to rule on the post-trial motion expired without a ruling, so it was denied by operation of law. *See* C.R.C.P. 59(j).

¶ 7 On appeal, Ellis contends that (1) he presented uncontroverted evidence that he incurred reasonable medical expenses in the amount of $373,252.47; and (2) no reasonable jury could conclude that his economic losses were less than that amount because there was no evidence to the contrary. Thus, he argues, the district court erred by denying his motion for a directed verdict and his motion for JNOV or new trial.

## II. Timeliness of Appeal

¶ 8 As an initial matter, we reject Bartimmo's argument that Ellis's appeal is untimely and should be dismissed. Bartimmo contends that the district court entered judgment on April 26, 2024. This seems to be a reference to the district court's "Jury Trial Minute Order" entered on that day.

¶ 9     The minute order memorialized the jury's verdict and was signed and dated by the court; however, it didn't include any reference to prejudgment interest.[1]  "[P]rejudgment interest is an integral component of a jury award of damages."  *Marso v. Homeowners Realty, Inc.*, 2018 COA 15M, ¶ 39.  A judgment isn't final until prejudgment interest is reduced to a sum certain and included in the judgment.  *Grand Cnty. Custom Homebuilding, LLC v. Bell*, 148 P.3d 398, 401 (Colo. App. 2006).  On September 11, 2024, the district court granted Ellis's motion for entry of judgment and included the total amount of prejudgment interest in its order.

¶ 10    After timely moving for and receiving an extension of time to file a post-trial motion, Ellis filed his post-trial motion on October 7, 2024 (the last day of the extended time period).  The motion was deemed denied sixty-three days later, on December 9, 2024.  *See* C.R.C.P. 59(j).  Ellis's deadline to file this appeal was January 27, 2025, *see* C.A.R. 4(a)(1), and he filed his notice of appeal on January 24, 2025.  Thus, his appeal is timely.

---

[1] Ellis included a request for prejudgment interest in his complaint.

III.    Directed Verdict and Judgment Notwithstanding the Verdict

¶ 11    Ellis contends that the court erred by not granting his motions for a directed verdict and JNOV because (1) he introduced undisputed evidence about his injuries, the medical care he received, and the amount of his past medical expenses; (2) Bartimmo admitted liability for the injuries; and (3) Bartimmo didn't dispute the necessity of Ellis's past medical care or the reasonableness of the medical expenses.  Thus, Ellis argues, the only reasonable inference is that the medical expenses were both necessary and reasonable.  Because we conclude that the jury could have determined that Ellis failed to meet his burden to establish the reasonableness of the medical expenses at issue, Ellis isn't entitled to a directed verdict or JNOV.

A.    Standard of Review and Applicable Law

¶ 12    We review de novo a district court's denials of a motion for directed verdict and a motion for JNOV.  *Parks v. Edward Dale Parrish LLC*, 2019 COA 19, ¶ 9.

¶ 13    In both cases, "[w]e view the evidence, and all inferences that may reasonably be drawn therefrom, in the light most favorable to the nonmoving party.  A court shouldn't grant either motion unless

5

there is no evidence that could support a verdict against the moving party on the claim." *Id.* at ¶ 10 (citation omitted).

¶ 14 To recover past medical expenses, a plaintiff must show that "the expenses were reasonable, necessary, and incurred as a result of the injury at issue." *Gilley v. Oviatt,* 2025 COA 27, ¶ 13. Such a claim for damages "may be established by the submission of 'substantial evidence, which together with reasonable inferences to be drawn therefrom provides a reasonable basis for computation of the damage.'" *Id.* (citation omitted).

### B. Analysis

#### 1. Causation

¶ 15 Bartimmo admitted that he caused Ellis's injuries, and Ellis gave uncontroverted testimony that the medical bills were incurred due to the injuries. Thus, the only reasonable inference the jury could have drawn is that the medical bills were incurred as a result of the injuries at issue. Bartimmo doesn't argue otherwise.

#### 2. Necessity

¶ 16 Ellis presented ample medical testimony regarding the severity of his injuries, the need for the medical services rendered, and the complexity of the surgeries.

6

¶ 17    Two surgeons testified[2] (in the form of video-recorded deposition testimony) about Ellis's injuries as follows:

- The "violent, forceful impact" of Bartimmo's vehicle caused a "terrible fracture" to Ellis's femur, pelvis, and hip socket, breaking the bones into "a couple dozen pieces."

- "You're not getting up from the cement when you have those fractures."

- The fractures sustained by Ellis "are associated with pretty significant physical impairment, even if [repair is] done appropriately.  And I think we did a pretty good job at fixing his fracture."

¶ 18    The surgeons also testified about the need to repair Ellis's injuries and the operational complexity of the surgeries he received:

- "[T]his is a fracture that absolutely needs to be fixed because you don't have any continuity of the hip joint and you obviously can't weight bear or put weight to that

---

[2] One surgeon (Dr. Cyril Mauffrey) was Ellis's treating surgeon.  The other (Dr. Brian White) was hired as an expert witness by Ellis's attorneys.

fracture, because you're just going to put the ball into your pelvis or into your abdomen."

- "[Y]ou have to operate on the inner pelvis around the bowel, around the really big blood vessels. That's a really hard surgery to perform."
- "The hip socket in general, it's probably one of the hardest bones to fix in the body . . . ."
- This was "not an easy operation."
- The fracture involved a "shattering [of] multiple pieces of a real critical area," and the "proximity of this injury to critical nerves and vessels . . . [made] the surgery harder and at high risk of injuring nerves and vessels."

¶ 19      Regarding rehabilitation services, one surgeon was asked whether the month-long rehabilitation stay was typical for someone with injuries like Ellis's. The surgeon responded, "Yes . . . these injuries . . . are, unfortunately, hard to recover from [because] [t]hey're bilateral."

¶ 20      On cross-examination of the surgeons, Bartimmo's counsel didn't inquire about the injuries Ellis sustained or the need for his medical treatment. In fact, during trial, Bartimmo's counsel

praised the medical care Ellis received.  In opening statement, counsel said,

- "Dr. Mauffrey is an excellent surgeon at Denver Health. He treated Mr. Ellis after the accident.  He — Mr. Ellis got great care at Denver Health.  Denver Health is a terrific facility."

- "There's no dispute that [Ellis] underwent two surgeries. There's no dispute that he has some hardware in his hip and in his leg.  Fortunately, after some rehabilitation, Mr. Ellis improved.  Mr. Ellis can still walk.  He's not a — he's not a paraplegic, he's not quadriplegic, . . . he wasn't paralyzed."

¶ 21    In sum, the jury heard uncontroverted testimony about the severity of Ellis's injuries, the complexity of the operations and postoperative care, and the necessity of the treatments he received. Even drawing every reasonable inference in Bartimmo's favor, we can't see how a reasonable juror could conclude that the medical expenses Ellis incurred weren't necessary.

### 3.    Reasonableness

¶ 22    We reach the opposite conclusion as to reasonableness.  Ellis presented the following evidence about his medical bills:

- He testified that he cross-checked each medical expense listed in the bill summary exhibit with the actual bill received and confirmed that he had incurred a total of $373,252.47 in medical expenses related to the accident.

- He also testified that he had attended all medical appointments and followed all of the doctors' advice.

¶ 23    Relying on *Gilley*, Ellis contends that he is entitled to a directed verdict or JNOV because this evidence was sufficient to meet his burden and was uncontested.  But *Gilley* doesn't go that far.  In *Gilley*, a division of this court was tasked with deciding whether the trial court erred by denying a *defendant's* motion for directed verdict on the basis that the plaintiff failed to prove the reasonableness and necessity of her medical expenses.  *Gilley*, ¶¶ 8, 10.  The division held that the court didn't err because the plaintiff presented evidence of the amount of her medical bills, which "is some evidence of the reasonable value of the medical services."  *Id.* at ¶ 29.

¶ 24    But just because Ellis's evidence was sufficient to withstand a defendant's motion for directed verdict doesn't mean that Ellis was entitled to a directed verdict or JNOV.  The evidence on reasonableness was sufficient, but it wasn't overwhelming.  The jury *could* have concluded that Ellis met his burden based on his testimony and the bill summary exhibit, but it would also have been reasonable for the jury to conclude that he hadn't.

¶ 25    For these reasons, we conclude that the district court didn't err by denying Ellis's motions for directed verdict and JNOV.

## IV.    New Trial

¶ 26    Alternatively, Ellis contends that the district court erred by denying his motion for a new trial as to economic damages because the damages award was inadequate.  We agree.

### A.    Standard of Review and Applicable Law

¶ 27    We review for an abuse of discretion a district court's decision to grant or deny a motion for a new trial based on allegations of inadequate damages.  *D.R. Horton, Inc.-Denv. v. Bischof & Coffman Constr., LLC*, 217 P.3d 1262, 1273 (Colo. App. 2009).  We must view the evidence admitted at trial in the light most favorable to the jury's verdict and reconcile the verdict with that evidence if at all

possible.  *See Lee's Mobile Wash v. Campbell*, 853 P.2d 1140, 1143 (Colo. 1993).

¶ 28    For a new trial to be required based on inadequate damages, C.R.C.P. 59(d)(5), the verdict must be so grossly and manifestly inadequate as to indicate that the jury neglected to consider the evidence or was influenced by passion, prejudice, or other improper considerations.  *See Peterson v. Tadolini*, 97 P.3d 359, 361 (Colo. App. 2004).  We will not reverse a damages award if any basis for the award exists in the record.  *Lee's Mobile Wash*, 853 P.2d at 1143.

## B.    Analysis

¶ 29    We have already concluded that the only reasonable inferences the jury could have drawn from the evidence are that Ellis's medical expenses were both necessary and caused by Bartimmo's conduct. We have also concluded that the jury didn't *necessarily* have to find that Ellis met his burden to show that the medical expenses represented the "reasonable value of the medical services" rendered. *Gilley*, ¶¶ 29-30.  However, we cannot see any basis in the record for the jury to have concluded that Ellis met his burden to show the

reasonableness of $45,000 of his medical expenses but failed to meet this burden as to any expenses beyond that amount.

¶ 30    Ellis's bill summary exhibit contained more than 100 billing entries organized by provider and date.  These included, for example, an entry for $47,060.70 for "Med-Trans Corp CO Med Evac" (his emergency airlift from Boulder to Denver); an entry for his initial weeklong stay in Denver Health Hospital for $163,940.70; entries for individual Denver Health physicians from the day of and the day after the collision ranging from $28.28 to $9,366.63; and entries for physical therapy in the months following the collision ranging from $189.00 to $428.00.  No single entry or cohesive group of entries adds up to $45,000.  And even if one could theoretically find some chance combination of billing entries that added up to $45,000 (or somewhere in that vicinity), it's highly unlikely that the jury simply decided that certain expenses were reasonable, but others weren't.  Instead, it appears the jury randomly invented an amount.

¶ 31    We also conclude that the amount is manifestly inadequate in light of the evidence presented regarding the magnitude of Ellis's injuries and medical expenses he incurred.  As discussed above,

13

Ellis's injuries required him to be airlifted from Boulder Community Health to the Level I trauma center at Denver Health. Ellis described how doctors put bolts through his leg so that they "could then connect cords, ropes, chains" to various weights so the bones could be "pulled apart" before his first surgery. Ellis also testified that for a full week after surgery, he was only able to "lay flat on [his] back" and that he then underwent approximately six weeks of inpatient rehabilitation so he could learn to sit and walk again. Even after he was discharged from inpatient rehabilitation, Ellis continued to receive in-home therapy from both a physical therapist and occupational therapist to relearn how to bathe and dress himself. And he was required to undergo a second surgery about eight months after the accident because "the two halves of [his] femur weren't . . . growing back together again."

¶ 32 The evidence also reflected that the medical treatments Ellis endured were costly. As described above, the evidence reflected that the flight to Denver on the day of the collision cost $47,060.70 — by itself, more than the jury's economic damages award. And a review of Ellis's bill summary exhibit reveals that the total medical bills from the day of and the day after the collision

were $111,047.50, *not* including the bills from Denver Health. When those costs are included, Ellis's costs for just the first week of care after his injury totaled more than $270,000.

¶ 33    As a result, we can only conclude that the award — about 12% of the total incurred medical expenses — is manifestly and grossly inadequate under the circumstances presented here. *See Hedgpeth v. Schoen*, 125 P.2d 632, 632-33 (Colo. 1942) (reversing for a new trial on damages when "[t]he undisputed evidence . . . [was] that plaintiff incurred actual expenses in the amount of $681.45" and the jury awarded only $236.15).  Given the closed nature of jury deliberations, we cannot identify with certainty what specific evidence the jury may have ignored or what improper considerations may affected its decision.[3]  But because the damages the jury did award are — as described above — completely untethered from any basis in the record, we conclude that something outside the record must have influenced the jury's

---

[3] We note, however, that four of the seven jurors submitted questions after Ellis's testimony, asking whether he had health insurance or whether insurance payments covered any of the medical expenses he had incurred.  While the court declined to answer those questions, they indicate that such considerations may have influenced the jury's economic damages assessment.

conclusion that the medical bills Ellis incurred were approximately 800% greater than the reasonable value of services rendered.

¶ 34    Accordingly, we conclude that the district court erred by denying Ellis's motion for a new trial on economic damages.[4]

## V.    Disposition

¶ 35    The judgment is reversed, and the case is remanded for a new trial on economic damages.

JUDGE J. JONES and JUSTICE MARTINEZ concur.

---

[4] To the extent Ellis argues that he should be awarded a new trial on noneconomic damages, his argument is too undeveloped for us to consider it. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (appellate courts don't address undeveloped arguments). Further, because of our disposition, we need not address Ellis's "third alternative" request for additur.